**UNITED STATES of America,**
Libelant,

v.

**LOCKHEED AIRCRAFT SERVICE-
INTERNATIONAL, INC.,**
Respondent.

**No. M-2195.**

United States District Court
E. D. New York.
March 8, 1962.

Joseph P. Hoey, U. S. Atty., Brooklyn, N. Y., by Stanley F. Meltzer, Asst. U. S. Atty., of counsel, for libelant.

Thomas D. Conway, Jamaica, N. Y., for respondent.

RAYFIEL, District Judge.

The United States of America (U.S. A.), as libelant, brought this action against Lockheed Aircraft Service International (LASI), an aircraft repair sta-

tion licensed by the Civil Aeronautics Administration under Section 623 of Title 49, U.S.C.A., to recover a civil penalty in the sum of $1,000, as provided for in Section 621 of the said Title.

The facts, as adduced at the trial, follow:

Overseas National Airways, Inc. (ONA), a supplemental air carrier authorized to engage in air transportation pursuant to a letter of registration and temporary certificate issued by The Civil Aeronautics Board, was the owner of a DC 6 transport type aircraft bearing CAA Number N66ONA, one of a fleet operated by it. In order to qualify as a supplemental air carrier, ONA was required to and did submit to the Federal Aeronautics Administrator an aircraft mechanical maintenance manual, which was approved by the Administrator, and which established the minimum standards for aircraft repair stations to observe in maintaining and servicing aircraft owned by the company. The said manual contained check lists of the work to be done in connection with maintaining and servicing its aircraft as well as final inspection check lists in connection therewith.

The aircraft in question, Number N66ONA, was turned over to LASI for service and maintenance as provided for in said manual and on September 8, 1958 it released the aircraft to ONA as having been serviced and inspected in accordance therewith. The aircraft then took off from New York International Airport at Idlewild and within a minute or a minute and a half thereafter the tower at the airport notified the flight personnel that its Number 2 engine had lost its cowling.

The cowling in question was received in evidence at the trial, as were the check list and inspection list for Engine Number 2. The check list contains two categories, one of which, headed "Routine", contains a list of the work to be done, each item of which is required to be signed by the mechanic who has performed it; the other is headed "Inspection" and each item must be signed by

the mechanic and an inspector. The "Routine" category contains, among others, the following items:

"1. Remove accessory cowling and ring cowl.

\* \* \* \* \* \*

"9. Re-install cowling after non-routine items are completed and inspected."

The "Inspection" category contains the following item "1. Cowling:"

At the bottom of this sheet (Exhibit 2) appears the following: "Engine inspection complete and airworthy: Mechanic H. Sauer

Inspector O'Reilly #233"

The inspection check list (Exhibit 3) is headed *"INSPECTION FINAL"* and contains the following: "Unless otherwise specified the following items shall be interpreted as 'Visual Final Inspection of \* \* \*.'" It also contains, under specific headings, a list of the parts of the aircraft in question which have been inspected. Under the fourth heading, *"NACELLES AND ENGINES"*, is the statement "20. Cowling installed and secure", alongside which appears the inspector's (O'Reilly's) stamp.

It is the Government's contention that the mechanics who performed the work on the aircraft in question failed to install the parts of the cowling on the Number 2 engine properly in that they neglected to engage the cam latch fasteners which hold the three sections of the cowling together, and that the inspection thereof was inadequate because of the failure to disclose that fact, thus causing the cowling to become disengaged from the Number 2 engine when the aircraft was in flight, and fall to the ground. The Government further contends that under the Civil Air Regulation 52.22–1 (14 CFR 52.22–1) LASI is responsible for the negligence and carelessness of its employees. The said Regulation provides as follows: "(a) General. An objective of this part is to place greater responsibility for the repair station's performance on the responsible managing officials. To this end it is essential that re-pair station officials give careful consideration to the qualifications and competency of individuals in their employ. *The primary responsibility for the satisfactory performance of a worker will be the repair station's."* (Emphasis mine.)

LASI contends that the employees who installed the cowling (Lemma and Joyce) were licensed by the Civil Aeronautics Administration and that its inspector (O'Reilly) made the "Final Visual Inspection" required by the manual by looking up at the cowling on the engine from the ground after it had been installed. It contends that it is under no legal obligation for the carelessness of its employees, and that the doctrine of *respondeat superior* does not apply since it hired employees who were licensed by the C.A.A.

It argues that O'Reilly's inspection from the ground was all that was required by the manual. It points out further that O'Reilly testified that he had run the Number 2 engine to full power, which causes the engine to rotate and counter rotate some six or eight inches, and that that would have been impossible with the three unfastened cowling panels remaining in position. LASI contends that the panels came loose by reason of some impact upon them by an object in flight, which, it claims, explains why two pieces of the cowling which were found 137 feet apart were similarly scarred.

I reject all those contentions. The evidence, in my opinion, points undisputably to the conclusion that LASI's employees, Lemma and Joyce, were careless in their re-assembly of the cowling on the Number 2 engine. As a matter of fact LASI itself must have been convinced of this for, in its letter of September 22, 1958, addressed to the C.A.A., admitted in evidence as Exhibit 1, it said: "We have terminated the services of Mr. Lemma and Mr. Joyce with LASI, Inc., *for their failure to act in accordance with the LASI prescribed standards of maintenance and the obligations of their current C.A.A. air-frame and powerplant certificates."* (Emphasis mine.)

There was no testimony as to any impact on the cowling caused by an object in flight. Nor was there any evidence of progressive failure of any part of the cowling or metal fatigue of its interior. It would appear, therefore, that the cowling fell from the Number 2 engine of the aircraft because (1) of the mechanics' failure to attach or secure the cam latches and (2) O'Reilly's failure to make a careful inspection, which would have disclosed that fact.

O'Reilly testified that he inspected the cowling from the ground. It would appear from the testimony in the case that no adequate inspection of the cam latches thereof could be made from that position, because the cowling, at the time of the inspection, was a considerable distance above the ground. William T. Zendler, a well qualified Government expert, by whose testimony I was impressed, stated that only by using a ladder to reach a position from which an inspection of the interior of the cowling could be made would it be possible to determine whether the cam latches were locked.

In its brief, LASI contends that an interpretation of Civil Air Regulation 52.22–1(a) (14 C.F.R. 52.22–1(a)), supra, which would make it subject to the civil penalty sought herein by reason of the "nonfeasance or misfeasance of its duly licensed aircraft mechanic remployee (sic) carries the regulation beyond the realm of the congressional enactment and the congressional power bestowed upon the Administrator to fulfill the congressional enactment." I disagree. Of what avail would the statutes and the regulations promulgated thereunder in the public interest be if a licensed service operator (LASI) could not be penalized for infractions thereof? 'ow else could it act except by and through its employees?

Accordingly, judgment is rendered in favor of the libelant against the respondent.

Submit, within ten days, findings of fact and conclusions of law in conformity herewith.