**Thomas George SOMLO, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD and William F. McKee, Administrator of the Federal Aviation Agency, Respondents.**

**No. 15330.**

United States Court of Appeals
Seventh Circuit.

Oct. 3, 1966.

Rehearing Denied Oct. 24, 1966.

Leslie L. Schroeder, Minneapolis, Frank J. McGarr, Chicago, for petitioner.

John H. Wanner, Oral D. Ozment, Civil Aeronautics Board, Washington, D. C., Lionel Kestenbaum, Howard E. Shapiro, Dept. of Justice, Washington, D. C., Donald F. Turner, Asst. Atty. Gen., Joseph B. Goldman, Gen. Counsel, Civil Aeronautics Board, Warren L. Sharfman, Associate Gen. Counsel, Litigation and Legislation, Robert L. Toomey, Tyll Van Geel, Attys., Civil Aeronautics Board, for respondents.

Before DUFFY, Senior Circuit Judge, KNOCH and CASTLE, Circuit Judges.

DUFFY, Senior Circuit Judge.

Petitioner Somlo seeks a review of Civil Aeronautics Board Order No. S 1291 which suspended his pilot's certificate for a period of six months. Petitioner was charged with violating Sections 61.3(a) and 61.131(b) of the Federal Aviation Regulations. These Regulations had been promulgated under authority contained in Section 601 of the Federal Aviation Act of 1958, 49 U.S.C. § 1421.[1]

On December 20, 1962, appellant Somlo was the holder of Airman's Certificate 1287006, with commercial pilot privileges and airplane single-engine land and instrument ratings.

Sometime in December 1962, the corporation of which appellant was president, acquired a twin-engine Cessna aircraft. Appellant took instructions in flying a twin-engine aircraft, and a licensed flight instructor endorsed in appellant's log book that he was ready for a multi-engine rating flight test.

Somlo presented himself twice at the Federal Aviation Agency at Du Page Airport, Illinois, for the purpose of taking a flight test for a multiengine rating. The second time was on December 26, 1962, but he was late for his appointment and did not receive his flight test.

On December 30, 1962, Somlo flew the Cessna multiengine airplane from O'Hare airport, Chicago, to Naples, Florida. He was accompanied by his wife, mother-in-law, two daughters aged 3½ and 4½ years, and a maid.

On January 2, 1963, Somlo flew the same aircraft from Naples, Florida, with the same people on board, with O'Hare airfield as his destination. Because of reported weather conditions in the Chicago area, Somlo filed an instrument flight rules flight plan by radio with the Federal Aviation Agency's flight service station at Lafayette, Indiana, and received an instrument clearance from Air Traffic Control to proceed to the Chicago terminal. However, as he approached the O'Hare Airport, he encountered icing conditions, and the aircraft struck a house. Four of the occupants of the airplane were killed and Somlo received serious injuries.

After an investigation, the Administrator proposed a suspension of petitioner's certificate for six months. Petitioner then surrendered his certificate to the Federal Aviation Agency stating he was "guilty of most of your charges." The Administrator issued a six months' suspension. Thereafter, the petitioner apparently had a change of heart and attempted to appeal to the Board but the appeal was not timely and was dismissed.

Subsequently, the Administrator reopened the record and directed an evidentiary hearing. The Administrator concluded that the violations charged had been established and directed a retroactive suspension for six months, commencing April 5, 1963. It was this decision which the Board, in effect, affirmed by the order now here under review.

The principal contentions of petitioner are 1) that he was, in fact, qualified for flying a multiengine aircraft, but that the Federal Aviation Agency unreasonably frustrated his efforts to take the flight test for multiengine flights, and 2) that the word "passengers" in Section 61.131(b) means fair-paying passengers and that members of his family and the maid who accompanied him on the trip to and from Florida did not come within that category.

As to his first contention, petitioner says that as he was qualified for a multiengine rating, the issuance of that rating was a mere formality, and that he would have received his rating but for the unreasonable and arbitrary refusal of the Federal Aviation Agency to give him his test.

1. The Administrator has the statutory authority and duty to promulgate regulations covering safety in flight, 49 U.S.C. § 1421 (Section 601 of the Act), and to license airmen, 49 U.S.C. § 1422 (Section 602). Under 49 U.S.C. § 1429 (Section 609), the Administrator may, if after investigation he determines that safety in air commerce and the public interest so require, issue an order suspending or revoking in whole or in part, an airman certificate.

In effect, petitioner says that where a pilot considers himself qualified for a rating and feels he has not been fairly dealt with by the Federal Aviation Agency in his efforts to obtain a license, he is free to disregard the license requirements of the regulation.

We reject this contention of the petitioner. A pilot may not become a law unto himself. In Poulos v. State of New Hampshire, 345 U.S. 395, at 409, 73 S. Ct. 760, 768, 97 L.Ed. 1105, the Supreme Court said: " * * * But to allow applicants to proceed without the required permits to run businesses, erect structures, purchase firearms, transport or store explosives or inflammatory products, hold public meetings without prior safety arrangements or take other unauthorized action is apt to cause breaches of the peace or create public dangers. The valid requirements of license are for the good of the applicants and the public. * * * Delay is unfortunate, but the expense and annoyance of litigation is a price citizens must pay for life in an orderly society * * *."

■■ It is clear that a pilot may not be permitted to disregard licensing requirements designed to insure technical skill and which have a substantial and close relationship to public safety. Therefore, even if the petitioner had been fully qualified for a license in December 1962, and there is no way of knowing that he was qualified, he was not justified in ignoring the legal requirements for a license.

■ Furthermore, we do not think the record disclosed any arbitrary action by the Agency. The record shows that petitioner made appointments for a test on December 18, 19 and 26, 1962. Petitioner admits he knew the Agency was on a tight schedule in view of the Christmas holiday season. For some reason not

shown, the inspector assigned to give the test on December 18, was unable to give it. The test scheduled for the 19th was cancelled because of bad weather conditions. Petitioner failed to appear at the time designated for the December 26th appointment. Furthermore, there is no indication in the record that petitioner then made any complaint. He merely made another appointment for January 4, 1963.

■ With respect to petitioner's second contention, it seems obvious that the purpose of the prohibition of carrying "passengers" in Section 61.131(b) [2] is the safety of the occupants of an airplane which the pilot has not established his qualifications to fly. Whether those on the plane paid for their passage or not is irrelevant. The term passenger "in common parlance * * * describes a physical status rather than a technical legal status." Vogrin v. Hedstrom, 220 F.2d 863, 866 (8 Cir. 1955), cert. den. 350 U.S. 845, 76 S.Ct. 86, 100 L.Ed. 753 (1955)

■ We hold the term "passenger" as used in Section 61.131(b) did not exclude the members of petitioner's family and the domestic servant who accompanied him on his trips to Florida and return.

We agree with the Board that petitioner was not a victim of a poorly-drawn regulation but acted deliberately. He had planned the trip to Florida with his family. He was, undoubtedly, impatient at the delays which he encountered in taking his tests.

The evidence shows that petitioner was well aware of the requirements of the pertinent regulations on his trip from Chicago to Florida. He classified his wife and two small daughters, his mother-in-law and the maid as "crew members" or "cargo." On his return trip, when he filed his instrument flight plan by radio, he listed "one person on board."

---

2. At the time of petitioner's violation, Section 61.131(b) provided "A commercial pilot may not serve as pilot in command of an aircraft carrying passengers or operated for remuneration other than one of the category and class for which he is rated, and in the case of large aircraft, of the type for which he is rated." 14 C.F.R. 61.131(b) (January 1, 1963, rev.).

**794**

Petitioner has made several other minor contentions, but we feel they are without merit and do not need discussion.

The order of the Civil Aeronautics Board, No. S 1291 will be and is

Affirmed.