UNITED STATES of America
v.
A. T. GARRETT.

UNITED STATES of America
v.
W. F. PETSCH.

UNITED STATES of America
v.
W. D. WALTERS.

UNITED STATES of America
v.
J. B. McDANIEL.
Civ. A. Nos. 10383–10386.

United States District Court
N. D. Georgia,
Atlanta Division.
Jan. 13, 1969.

Charles L. Goodson, U. S. Atty., Slaton Clemmons, Asst. U. S. Atty., Atlanta, Ga., J. N. Coker, Regional Counsel, Atlanta, Ga., Jonathan Howe, East Point, Ga., for plaintiff.

J. R. Goldthwaite, Jr., Atlanta, Ga., for defendants.

SIDNEY O. SMITH, Jr., Chief Judge.

These are four seldom-used proceedings, seeking to recover civil penalties against the defendants under 49 U.S.C.A. § 1471(a). Specifically, they are accused of violation of 49 U.S.C.A. § 1430(a) (2) which provides that it shall be unlawful

For any person to serve in any capacity as an airman in connection with any civil aircraft, aircraft engine, propeller or appliance used or intended

for use, in air commerce without an airman certificate authorizing him to serve in such capacity, or in violation of any term, condition, or limitation thereof, or in violation of any order, rule, or regulation issued under this subchapter.

The particular regulations involved are contained in Federal Aviation Regulations 14 CFR 43.13. These regulations, made a part of the statute, prescribe that "each person maintaining or altering or performing preventive maintenance shall use methods, techniques and practices acceptable to the Administrator." (14 CFR 43.13(a)). Specifically, the following is provided:

Special provisions for air carriers and commercial operators. Unless otherwise notified by the Administrator, the methods, techniques, and practices contained in the maintenance manual or the maintenance part of the air carrier manual of a certificated air carrier or commercial operator (that is required by its operating certificate or approved operating specifications to provide a continuous airworthiness maintenance and inspection program) constitute acceptable means of compliance with this section.

14 CFR 43.13(c).

The case was presented to the court, on which are made the following

### FINDINGS OF FACT

Each of the defendants was employed on May 13, 1965, at Eastern Air Lines' repair and overhaul assembly facility in Atlanta, under the general supervision of Mr. S. T. White, Manager-Aircraft Maintenance.

Defendant Garrett occupied the position of Lead Mechanic (or foreman) over an eleven man crew, in which Petsch, Walters, and McDaniel were line mechanics. It is customary for several repair and maintenance jobs to be carried on simultaneously by groups of mechanics under the lead mechanic's direction.

Certain regular work is carried on in routine fashion by each crew.

The particular job in question involved the "build-up" of an Electra prop. The major overhaul on such equipment is performed in Miami and the component parts shipped to Atlanta for assembly. The details of Electra prop assembly are buried in the manufacturers (Allison) instructions inserted in the general Eastern maintenance manual. (Sec. 63, Court's Exhibit "A"). While such instructions are verbose, technical, and beyond the practical comprehension of all except the most experienced mechanics, a literal adherence to them would have effected a proper assembly in this instance.

In actual practice, the company, Eastern, has developed a work sheet (U.S. Exhibit No. 2), which lays out by steps the essentials of the contents of the maintenance manual though not a formal part thereof. Adherence to such work sheet would likewise have effected a proper assembly in this instance.

While there was no specific approval by the FAA of the pertinent sections of the maintenance manual or the work sheet, such procedures had been in use for a considerable period of time both by the crews and certificated inspectors. Some 15 props per month were assembled in Atlanta on this basis.

In the assembly itself, the parts are received in four boxes, two containing the four prop blades, one containing the hub and one the cover. The hub weighs approximately 500 pounds and is mounted by the crew on an assembly stand for working purposes. The key operation is to place the four blades in the proper receptacle at the correct pitch of −4° at 42″ stations.

In this particular instance, number 1 blade was inserted at −8° while blades 2, 3, and 4 were inserted correctly. The assembly passed various inspections and was placed into service, resulting in excessive vibration which lead to the discovery of the error. The responsibility of the inspectors involved is no longer at

issue, but only that of the repair crew itself.

In this instance, Garrett assigned the other defendants to the assembly. Petsch was the more experienced mechanic and was certified by FAA. McDaniel was the lesser experienced and Walters occupied the dual capacity of mechanic-electrician. All these participated in the initial set-up. Immediately after the first insertion of the blades, a field emergency with a 727 landing gear failure occurred. As this was a high priority task, McDaniel and Petsch were called off the prop assembly by Garrett for such work, leaving Walters alone with the prop. Later Petsch and McDaniel returned, but before any additional work began, Petsch was called back to the 727 and had nothing further to do with the assembly.

The initial part of the assembly is to check the pitch. Initially this is done with a "devil's level", but the ultimate test is by use of a protractor. If the prop has been inserted into the wrong spline initially, it is necessary to reinsert the blade, always checking out the pitch by means of the protractor. It takes two men to handle each blade and normally the protractor work is checked by two men.

Under such circumstances, Walters and McDaniel actually performed the work involved by improper seating and/or improper protractor readings. Walters actually initialed the work sheet and summoned the inspector to approve the work. Neither the assembly stand nor the interruption by work on the field emergency caused or justified the improper assembly, which occurred in violation of the work sheet and the maintenance manual. Indeed such conditions are commonplace and render the use of check sheets even more viable.

## CONCLUSIONS OF LAW

■ While the statute involved concerns a penalty, it is civil in nature and when it is enacted and the implementing regulations adopted to promote the public good, a reasonable preponderance of the evidence is sufficient to sustain the government's burden of proof. United States v. Proper, 7 Aviation 18.173 (D.C. N.Y.1962).

■ The central issue here, however, is not the quantum of proof, but the argument that the "check sheet" in question was not tantamount to an FAA approved procedure or, if it is, that it represents an improper delegation of power by the FAA to the carrier. Private mechanics and contract repair bases must have all procedures approved directly by the FAA, while in the case of certificated air carriers as here, the carrier's own "methods, techniques, and practices contained in the maintenance manual." —"constitute acceptable means of compliance with this section." While the evidence does not reveal an affirmative approval of any such procedure, the regulation is negative in approach in that such procedures are proper "unless otherwise notified by the Administrator." Thus, proof of the accepted method carries the burden of establishing the basis for violation. Nor does the absence of the work sheet from the maintenance manual proper, in the court's opinion, destroy its efficacy. As far as the court can tell, the work sheet is merely a practical aid to the mass of detail in the manual proper. To rule that use of a common-sense tool such as this shifts the blame from mechanic to carrier is indeed strained. This court would be far more inclined to condemn a practice which placed the onus of the entire manual on the individual mechanic without such aids.

Based on years of experience with the methods of certificated carriers, the regulation is reasonable and practical in substituting the carrier's procedures for the minutiae of individual FAA approval. The regulatory powers under the Act are broad. See Doe v. C.A.B., 356 F.2d 699 (10th Cir. 1966); Somlo v. C.A.B., 367 F.2d 791 (7th Cir. 1966). It cannot be said that such regulation is unreasonable or arbitrary.

Based on the above, the evidence reveals a violation by defendants Walters and McDaniel. In this respect, the court is satisfied that they are directly involved. As to Petsch, even the government concedes that he was not involved either directly or indirectly and no showing as to any violation by him has been made. There remains the question of Garrett's culpability, if any. As the lead mechanic, or foreman, he was not directly involved and only exercised general supervisory power over the crew members. Thus the error occurred without his direct participation. No case is found delineating the limits of such responsibility. Under such circumstances the court can only hazard a trend, which in this instance points towards responsibility on Garrett's part also. Generally, the courts have adhered to a rule of non-delegability in such matters. Thus, an employer cannot disclaim responsibility on the grounds that its employees alone erred. United States v. Lockheed Aircraft Service Int'l., 202 F.Supp. 665 (E.D.N.Y.1962). Nor can an inspector delegate any duties under the statute. French v. C.A.B., 378 F.2d 468 (10th Cir. 1967). Rationally, there is no distinction between these functions and that of the foreman. "The neglect and oversights of his helpers provide no excuse for the petitioner." What would be the point in requiring that a foreman be certificated if he does not share responsibility for his crew's performance. Otherwise, a simple assignment clerk is all that would be required or the crew could insist that the inspection failure was the true fault. On reason, then, the court concludes that the supervising foreman bears equal responsibility with his crew for any violation of the act or regulations thereunder.

Fortunately, the violation here was not serious. Accordingly, as to defendants Garrett, Walters, and McDaniel a civil penalty of $100.00 each is imposed. As to defendant Petsch, the case is dismissed. Appropriate judgments may be presented by government counsel.

It is so ordered.