**AIR LINE PILOTS ASSOCIATION, IN-TERNATIONAL, Petitioner,**

v.

**FEDERAL AVIATION ADMINISTRA-TION, Respondent.**

**No. 24545.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 1971.

Decided Nov. 10, 1971.

Mr. Gary Green, Washington, D. C., for petitioner. Messrs. Herbert A. Levy and Angelo V. Arcadipane, Washington, D. C., were on the brief for petitioner. Mr. Allen J. Berk, Washington, D. C., also entered an appearance for petitioner.

Mr. Leonard Schaitman, Atty., Department of Justice, with whom Mr. L. Patrick Gray, III, Asst. Atty. Gen., and Mr. Alan S. Rosenthal, Atty., Department of Justice, were on the brief, for respondent.

Before McGOWAN and MacKINNON, Circuit Judges, and GOURLEY,* Senior District Judge for the Western District of Pennsylvania.

PER CURIAM:

Petitioner Air Line Pilots Association (ALPA) seeks review (49 U.S.C. § 1486 (1970)) of a Federal Aviation Administration (FAA) dismissal of petitioner's complaint alleging violations by Mohawk Airlines of FAA regulations.

Two Mohawk pilots, on separate occasions, were disciplined (by 15-day suspensions) for refusing to fly a regularly scheduled flight. Their refusal was based on their claim that, in light of weather conditions and the inoperative condition of the BAC 1–11 aircraft's autopilot, in their judgment the flight would be unsafe. There is no claim by the FAA that these refusals were in bad faith or for ulterior motives, and it may be assumed that they were not.

The FAA, pursuant to regulation (14 C.F.R. § 121.301 et seq., and § 121.627(c)), publishes for every type of aircraft a Minimum Equipment List (MEL), enumerating all items of equipment which each aircraft is required to have, in operative condition, during all flights. When an aircraft is certificated with items of equipment on board over and above that minimally required for safety, that equipment is also listed on the MEL, but with the proviso that it may be inoperative in all modes. The MEL for the BAC 1–11 aircraft lists an autopilot, but provides that it may be inoperative in all modes. The BAC 1–11 in these two incidents both carried autopilots which were inoperative.

The central issue in this case focuses upon an ambiguity in the relationship between two groups of FAA regulations.

ALPA claims Mohawk violated FAA's pilot-in-command regulation, 14 C.F.R. § 91.3, which provides:

> The pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft.

To buttress this alleged authority, ALPA cites 14 C.F.R. § 121.663, which provides that

> . . . The pilot in command and an authorized aircraft dispatcher shall sign the (flight) release only if they both believe that the flight can be made with safety;

and § 91.8, which provides that

> No person may . . . threaten, intimidate, or interfere with a crew member in the performance of his duties aboard an aircraft being operated in air commerce.

After Mohawk disciplined the two pilots, ALPA filed a complaint with the FAA, alleging Mohawk's violation of these regulations, and requesting the FAA to order Mohawk to cease the violations and to post "in a place readily accessible to pilot personnel" a notice setting forth the regulations and promising not to violate them in the future.

The FAA determination under review was embodied in a letter to the petitioner's counsel from the Chief of the Flight Standards Branch of the Boston Area Office. It enclosed the report of the investigating officer in the district office in upstate New York. That report had concluded that the regulations claimed to be violated by petitioner did not apply.[1] To the extent that the reasons for this conclusion were adopted by the Boston Area Office, we think those reasons are not well founded; and, were they the

---

* Sitting by designation pursuant to 28 U.S. C. § 294(d) (1964).

1. It was said that (1) the final authority of the pilot "as to the operation of the aircraft" (§ 91.3) does not apply where the pilot refuses to take up a plane, because the plane is not "in operation" at that point; (2) Mohawk did not "intimidate" or "interfere with" the two pilots' exercise of authority because, in fact, they never flew the planes; and (3) the claimed violation of § 121.663 did not occur because there was no denial or interference with the pilot's authority to refuse to sign flight releases.

**1054**

sole basis for the FAA decision, we would be compelled to reverse.[2]

■ The FAA did, however, identify a second ground for dismissing the complaint. It was that their authority under statute and regulations to establish minimum equipment lists [3] modifies the scope of the pilots' authority under § 91.3, and that therefore the pilot has no FAA protected right to refuse flights for lack of operable equipment not required by the MEL.[4] Although perhaps a different view of the interrelationship of the MEL regulations and the pilot-in-command regulation might represent better policy,[5] we cannot say that the FAA construction is without rational basis. In light of the deference due to agency constructions of their own regulations, we do not upset that interpreta-

tion here. *See* Davis, 1 Administrative Law Treatise, § 5.03–5.05.

■ The statutes and regulations clearly give the FAA authority to establish minimum requirements for aircraft equipment. The determination that the particular type of autopilot involved here is not required in the interests of safety is well within the scope of the agency's expertise and is not challenged here. Not irrationally, the agency may conclude that allowing pilots to refuse flights for lack of equipment not required by the MEL would nullify the agency's authority to establish those requirements.

The problem here is made more difficult by the fact that these pilots did not refuse their flights *solely* for lack of an operative autopilot, but for the lack of

2. The dubious construction of the words "as to the operation" as applying only during flight time or when the plane is "*in* operation" is undermined by the words of related regulations which expressly limit the *pilot's* authority in certain cases to an aircraft "during flight time." 14 C.F.R. § 121.537(d). Section 91.3 has no such words of limitation, and it would seem that, if the coverage of that section were intended to be so limited, language to that effect would have been included, as it has elsewhere.

Further, the construction of §§ 91.8 and 121.663 taxes our credulity, in the light of the fact that the pilots were clearly disciplined for their refusal to fly the planes in question. We cannot agree that interference or intimidation has to be successful in its objectives to still be interference or intimidation. If these pilots had an FAA-protected right to refuse these flights, then punishing them for exercising that right would clearly constitute interference and intimidation.

3. 49 U.S.C. § 1421 (1970), 14 C.F.R. § 121.627(c) 14 C.F.R. § 121.301 et seq.

4. Thus, in its letter dismissing the complaint, the FAA said:
"Regulations require a pilot-in-command to conduct flight operations within the limits imposed by those regulations. . . . If demands are made which are in excess of the minimums required by regulation, as in this case, the management of that company may elect to question your adherence to company

policy. . . . The FAA approved MEL permits operations without an auto-pilot damper. These decisions were reviewed and found to be consistent with safe practice."

5. It is entirely possible to view the two regulations as complementing each other doubly to ensure air safety. Thus viewed, the pilot could not authorize a flight lacking any MEL required equipment, while at the same time no flight could be undertaken when the pilot believes in good faith that in light of all the circumstances the flight would be unsafe even with all the required equipment. In 1969 the FAA suggested and then rejected a proposal to place autopilots on the BAC 1–11 MEL. At hearings on the matter, the airline companies opposed the requirement, saying, among other things:
Dispatch rules now afford adequate protection in that the Captain can refuse an airplane because of inoperative components, whenever there are extenuating circumstances. . . . Airline pilots have the prerogative of refusing a flight with inoperative equipment when conditions dictate *regardless of MEL requirements.* Applying the captain's good judgment to conditions that prevail seems a more prudent approach than an arbitrary rule requiring a piece of equipment that may not be used on a particular flight. (Emphasis added.)
However, the industry view cannot be held to bind the FAA, which, in any event, may construe regulations in the light of specific rather than hypothetical cases.

one in light of inclement weather conditions, which the pilots claimed made a workable autopilot necessary for safety. It would appear that § 91.3 was designed to give pilots the authority and flexibility to make go-no-go decisions for just such reasons as inclement weather. The question, therefore, is whether the scope of that authority extends to decisions based on weather which are coupled with decisions on the necessity of equipment. The FAA says no. Since the FAA's authority to make minimum equipment lists must include the power to decide that certain equipment is unnecessary in all kinds of weather, its position is not irrational.

■ We do not consider the argument, not presented to the FAA and raised for the first time in this court, that Mohawk's actions violated its own Mohawk Manual and thus amounted to a violation of FAA regulations. *See* United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952). Although FAA regulations require each airline to prepare and keep a manual of operations,[6] it is far from clear that violations of those manuals constitute a *per se* violation of FAA regulations.[7] In any event, the petitioner has offered no justification for not raising that point before the FAA; and we adhere to the statutory proscription. 49 U.S.C. § 1486(e).

This case represents a difficult problem of reconciling two agency regulations which do not fit comfortably together. The FAA is the agency entrusted with the administration of the statute, and is familiar with the practical problems of its enforcement. Since the agency's resolution of the problem is not irrational, we leave its action undisturbed.

It is so ordered.

---

6. 14 C.F.R. §§ 121.133(a), 121.135.

7. The FAA suggests that an airline's violation of its own manual gives rise merely to a contract dispute or labor grievance between the pilots and the airline. It is of interest to note in this regard that the very incidents which relate to the petitioner's complaint were, so we were informed at oral argument, the subject of a grievance proceeding which resulted in an award in favor of the two pilots involved. It is doubtful that 14 C.F.R. § 121.133 (a), which quite sensibly requires airlines to maintain some published guide to operations, intended to elevate every company manual provision to the status of an FAA regulation.