419 F.Supp. 795 (1976)
UNITED STATES of America, Plaintiff,
v.
OZARK AIR LINES, INC., Defendant.
No. 75-822 C (1).
United States District Court, E. D. Missouri, E. D.
June 15, 1976.
Order Nunc Pro Tunc June 17, 1976.
*796 Donald J. Stohr, U.S. Atty., William G. Cole, Asst. U.S. Atty., St. Louis, Mo., for plaintiff.
Joseph A. Bohrer, Neale, Newman, Bradshaw & Freeman, Springfield, Mo., Lon Hocker, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, Mo., for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
MEREDITH, Chief Judge.
This matter was tried to the Court without a jury. The Court has been duly informed by briefs, exhibits, depositions, and testimony.

Findings of Fact
1. Defendant Ozark Air Lines, Inc., is and at all times hereinafter mentioned was a corporation, with its principal corporate office at St. Louis International Airport, St. Louis, Missouri.
2. Defendant is and at all times mentioned herein was the holder of Air Carrier *797 Operating Certificate No. 308, issued under Part 121 of the Federal Aviation Regulations, 14 C.F.R. § 121, and is engaged in the common carriage by air of both persons and cargo.
3. Defendant's air security program, approved by the Federal Aviation Administration on May 11, 1973, provides in pertinent part in I.1.a.2):
"All passengers shall submit their carry-on baggage for physical inspection. . . Passengers shall be cleared by a metal detector. Those who do not alarm the metal detector and have no weapons in their carry-on baggage may board their flight."
4. On May 4, 1974, Ms. Olivia Kay Burns, presently known as Ms. Olivia Langendoerfer, purchased an airline ticket from Columbia, Missouri, to St. Louis, Missouri, to Omaha, Nebraska, entitling her to passage on defendant's flight No. 893 from Columbia, Missouri, to St. Louis, Missouri.
5. Prior to boarding flight No. 893, Ms. Burns gave her white leather shoulder bag to a security screener for search and inspection. The security screener, Mr. James F. Torpy, was an employee of Burns International, Inc., which was then under contract with defendant to provide security services at Columbia, Missouri, Regional Airport. Mr. Torpy made a manual inspection of Ms. Burns' shoulder bag and found no firearms therein.
6. At the time of Mr. Torpy's inspection, Ms. Burns' shoulder bag contained a green cosmetic bag inside of which was a loaded snub-nosed, twenty-two caliber Beretta automatic pistol, model 950B, serial No. C83823.
7. Ms. Burns boarded defendant's flight No. 893 in possession of the firearm and was a passenger on flight No. 893 from Columbia, Missouri, to St. Louis, Missouri, on May 4, 1974.
8. Later in the afternoon of May 4, 1974, Ms. Burns submitted her white leather shoulder bag for inspection and search at the Blue Concourse of the St. Louis, Missouri, International Airport, in preparation for boarding Eastern Air Lines Flight No. 98 for Omaha, Nebraska.
9. During the manual search of Ms. Burns' shoulder bag on the Blue Concourse, a loaded twenty-two caliber automatic pistol, model 950B, serial No. C83823, was discovered by the security screener in a green cosmetic bag located inside Ms. Burns' shoulder bag.

Conclusions of Law
1. This Court has jurisdiction, pursuant to section 1007 of the Federal Aviation Act of 1958, 49 U.S.C. § 1487(b).
2. Plaintiff charges that defendant failed to maintain and carry out the screening system prescribed under defendant's approved security program, and that defendant was thereby in violation of section 121.538(h) of the Federal Aviation Regulations, 14 C.F.R. § 121.538(h), and section 610(a) of the Federal Aviation Act, 49 U.S.C. § 1430(a), and thereby subject to a civil penalty under section 901 of the Act, 49 U.S.C. § 1471.
3. 49 U.S.C. § 1430(a) provides in pertinent part:
"It shall be unlawful
"(5) For any person to operate aircraft in air commerce in violation of any other rule, regulation, or certificate of the Administrator under this subchapter;"
4. Federal Aviation Administration regulation 121.538(h) provides:
"Each certificate holder shall at all times maintain and carry out the screening system prescribed by paragraph (b) of this section and the security program approved under paragraph (c) of this section."
"Federal Aviation Regulation 121.538(b) provides in pertinent part:
`(b) Each certificate holder shall . . . adopt and put into use a screening system, acceptable to the Administrator, that is designed to prevent or deter the carriage aboard its aircraft of any . . . weapon in carryon baggage or on or about the persons of *798 passengers, except as provided in § 121.585.'
"Federal Aviation Regulation 121.585 prohibits carriage of weapons aboard an aircraft except by certain authorized persons."
5. 49 U.S.C. § 1471(a)(1) provides in pertinent part:
"Any person who violates (A) any provision of subchapter III, IV, V, VI, VII, or XII of this chapter or of section 1514 of this title or any rule, regulation, or order issued thereunder . . . shall be subject to a civil penalty of not to exceed $1,000 for each such violation; . . ."
6. Plaintiff argues that air carriers are strictly liable for violations of 49 U.S.C. §§ 1430 and 1471 and 14 C.F.R. § 121.538, but that even if a negligence theory applies, the doctrine of res ipsa loquitur shifts the burden of proof to defendant to disprove negligence once plaintiff has demonstrated by a preponderance of the evidence that a gun was improperly carried aboard the flight. Defendant argues that the statute and regulations in question do not impose an absolute duty on the carrier to find any unauthorized weapon, and that defendant's only duty under its air security program and the statute and regulations is to maintain a passenger screening system and to deny boarding to any passenger found to be in unauthorized possession of a firearm. Defendant also contends that plaintiff has failed to point out any standard against which its conduct could be labeled negligent.
7. The Court need not reach the issue of whether or not strict liability or the doctrine of res ipsa loquitur applies since it finds that defendant was clearly negligent in its screening of Ms. Burns' carry-on baggage.
8. Under 14 C.F.R. § 121.538, an air carrier has a duty to maintain and carry out a screening program which is designed to prevent or deter the carriage aboard its aircraft of unauthorized weapons. Under its air security program, defendant assumed the specific duty to conduct a physical inspection of all carry-on baggage, and to allow boarding only to passengers who ". . . have no weapons in their carry-on baggage." I.1.a.2)
9. In a preamble to an amendment to 14 C.F.R. § 121.538, Amendment 121-85, adopted February 29, 1972, published in 37 F.R. 4904 on March 7, 1972, the F.A.A. explained the use of prevent and deter in its regulation:
"Some concern was expressed with the use of the term `prevent' (in the phrase `prevent or deter' in the proposal) on the grounds that the term `deter' alone would be more realistic and possible to implement. However, the phrase as proposed appropriately requires prevention when it may reasonably be achieved and deterrence where prevention cannot so be achieved."
10. The FAA's construction of its own regulations is entitled to due deference by the Court. Air Line Pilots Association, International v. Federal Aviation Administration, 147 U.S.App.D.C. 209, 454 F.2d 1052 (1971). The construction of section 121.538 as requiring prevention whenever reasonably achievable is a rational construction of the regulation.
11. Section 601 of the Act, 49 U.S.C. § 1421, provides in pertinent part:
"(b) In prescribing standards, rules, and regulations, and in issuing certificates under this subchapter, the Administrator shall give full consideration to the duty resting upon air carriers to perform their services with the highest possible degree of safety in the public interest . . ."
12. Under the statute and regulations, defendant has at least a duty to conduct searches of the carry-on baggage of boarding passengers with the highest possible degree of care, and to prevent the carrying aboard of unauthorized weapons where such prevention can reasonably be achieved.
13. In United States v. Garrett, 296 F.Supp. 1302, 1304 (N.D.Ga.1969), aff'd, 418 *799 F.2d 1250 (5th Cir. 1969), cert. denied, 399 U.S. 927, 90 S.Ct. 2239, 26 L.Ed.2d 792 (1970), the Court stated:
"While [49 U.S.C. § 1471(a)] concerns a penalty, it is civil in nature and when it is enacted and the implementing regulations adopted to promote the public good, a reasonable preponderance of the evidence is sufficient to sustain the government's burden of proof. United States v. Proper, 7 Aviation 18.173 (D.C.N.Y. 1962)."
14. Plaintiff has established by a preponderance of the evidence that Ms. Burns carried an unauthorized weapon aboard defendant's Flight No. 893. Plaintiff has also established by a preponderance of the evidence several facts surrounding the screening of passenger Burns which lead the Court to find that defendant's security screener was negligent in his inspection of Ms. Burns' shoulder bag.
(a) Most significant is the fact that another security screener at the St. Louis International Airport found the weapon while conducting an identical search later on the same day.
(b) In addition, the size of the purse and the gun make it apparent that a reasonably careful search would have discovered the weapon.
15. Accordingly, the Court finds that defendant has violated 49 U.S.C. § 1430 and 14 C.F.R. § 121.538, and is thereby liable for a civil penalty under 49 U.S.C. § 1471. A penalty of $500.00 will be imposed on defendant.