UNITED STATES of America, Plaintiff,

v.

**AIRWAYS SERVICE, INC., Defendant.**

UNITED STATES of America, Plaintiff,

v.

**LeRoy Luther LEE, Defendant.**

UNITED STATES of America, Plaintiff,

v.

**Allen Wayne MARTIN, Defendant.**

Nos. C–75–4050, 4051 and 4054.

United States District Court,
N. D. Iowa, W. D.

March 29, 1977.

Alan H. Kirshen, Asst. U. S. Atty., Sioux City, Iowa, for U. S.

James F. Gaukel, Mapleton, Iowa, for Lowell Crabb, President & Gen. Mgr. Airways Service.

Gaukel & Nevins, Mapleton, Iowa, for Lee and Martin.

# FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

McMANUS, Chief Judge.

This matter is before the court on a Complaint for Civil Penalty filed by the United States on August 6, 1975, against defendants Airways Service, Inc., LeRoy Lee and Allen Martin, and heard by the court on October 26, 1976.

## Findings of Fact

1. Defendant Airways Service, Inc. (Airways) is an air taxi commercial corporation engaged in air taxi, certificated flight school, and similar aeronautical operations, with a principal place of business in Sioux City, Iowa.

2. Defendants Lee and Martin are employees of defendant Airways; Lee being a licensed aircraft mechanic and an authorized inspector, and Martin being a licensed mechanic and pilot.

3. Beech Model 95–C55, registry N2099W (2099 Whiskey) is an aircraft used in air taxi operations by defendant Airways and was the purposed object of maintenance, inspections and other conduct required by Federal Aviation Administration (FAA) regulations, the omissions of which allegedly constitute the violations here at issue.

4. 2099 Whiskey was weighed on October 6, 1970, and empty weight and center of gravity values were calculated on that date, or subsequently, to be effective for three years. The aircraft was not flown between October 6, 1973 and January 22, 1974. The aircraft was not weighed nor were empty weight or center of gravity calculated until January 22, 1975.[1] Between January 22, 1974 and January 22, 1975, the aircraft was flown numerous times.

---

1. Defendant Airways seeks the court to conclude "as a matter of law" that the craft was reweighed on January 22, 1974 and the empty weight and center of gravity calculated, basing such a conclusion on alleged corroborating testimony and records. The testimony by defendant's witnesses in that regard, Lee and Crabb, was equivocal, not disinterested, and, in the court's estimation, not credible. The allegedly corroborating record evidence was a cryptic handwritten notation in a work sheet stating: "Superceeded (sic) 1–22–74 by weighing [unintelligible]." The court concludes that the evidence is insufficient to establish that the weighing took place and thus, as a *matter of fact*, the empty weight or center of gravity values were not derived from the January 22, 1974, weighing. *See Newman v. Shaffer*, 494 F.2d 1219, 1220 (2d Cir. 1974).

5. Defendant Martin installed certain bolts and lubricated the landing gear uplock mechanism on 2099 Whiskey so as to comply with Airworthiness Directive (AD) 72–22–1. The lubrication of the mechanism was not recorded by Martin as the certificated mechanic. Additionally defendant Lee, acting as inspector, certified the craft as airworthy without ascertaining recordation of the lubrication.

6. Defendant Lee inspected and replaced certain fuel line hoses on 2099 Whiskey so as to comply with AD 73–21–2. The work performed was noted in a company work order but was not noted in the airplane's logbook.

7. On January 19, 1975, a FAA SWAP (Systems Worthiness Analysis Program) team inspected the Airways' facilities and returned to Des Moines with copies of a portion of Airways' records relating to aircraft weight and center of gravity, compliance with A.D.'s, and pilot qualifications.

*Conclusions of Law*

1. The Administrator of the FAA is empowered to prescribe reasonable rules and regulations governing, in the interests of safety, the inspection, servicing, and overhaul of aircraft, aircraft engines, and appliances, and the periods for and the manner in which such inspection, servicing, and overhaul shall be made. 49 U.S.C. § 1421(a)(3).

2. Rules promulgated under 49 U.S.C. § 1421 are not merely advisory or precatory but have the force and effect of law. *Todd v. United States*, 384 F.Supp. 1284, 1294 (M.D.Fla.1974) *as amended* (1975); *Stanley v. United States*, 239 F.Supp. 973, 975 (N.D.Ohio 1965); *see Tilley v. United States*, 375 F.2d 678, 680 (4th Cir. 1967).

3. Defendant Airways, as an Air Taxi Commercial Operation, is subject not only to the General Operation and Flight Rules of 14 CFR § 91, but also to the more restrictive regulations contained in 14 CFR § 135.

4. By operating[2] 2099 Whiskey between January 22, 1974 and January 22, 1975, when the aircraft weight and center of gravity values had not been calculated from actual weighing conducted within the preceding three years Airways has violated 14 CFR § 135.167(a).[3]

5. The government has not sustained its burden of proof with respect to the alleged violation of 14 CFR § 91.31(b)[4] by defendant Airways, and therefore a violation has not been made out.[5]

2. Airways is a "person" which "operate[d]" 2099 Whiskey within the meaning of the regulations discussed herein. *See* 14 CFR § 1.1.

3. 14 CFR § 135.167(a) states: "[N]o person may operate a multiengine aircraft in operations to which this part applies unless the current empty weight and center of gravity are *calculated from values established by actual weighing of the aircraft within the preceding 3 years*."

4. 14 CFR § 91.31(b) states: "No person may operate a U.S. registered civil aircraft unless there is available in the aircraft a current airplane . . . flight manual, . . . containing each operating limitation prescribed for that aircraft by the Administrator, including the following:

> . . . . .
>
> (3) Aircraft weight, center of gravity, and weight distribution."

5. The determination of violation of this regulation turns on the definition of "current" airplane flight manual in accordance with the terms of that regulation. Section 91.31(b) affords no light to the question nor does § 1.1, the general definition section, resolve the uncertainty. Section 91.31(b) does not impose a currency requirement of three years as does § 135.167(a). The section merely requires that aircraft weight, center of gravity, and weight distribution be noted on a "current" airplane flight manual. It is clear that the flight log of 2099 Whiskey does contain figures for empty weight, empty weight center of gravity, and useful load. In the absence of guidance as to what constitutes "weight and center of gravity" contained in a "current flight manual" within the meaning of this section the court will proceed according to two considerations: 1) in the absence of major alterations or modifications the required figures are likely to remain static, and 2) the government bears the burden of proof.

A perusal of the flight log reveals no major alteration or modification in the aircraft. The instances of repair and inspection noted tend to be of a replacement type only. Defendant Lee reflects this conclusion by noting on one repair

6. It is the duty of the pilot to judge the airworthiness of the airplane that he flies. *Gibbs v. United States,* 251 F.Supp. 391, 398 (E.D.Tenn.1965). Performance of that duty requires that compliance with A.D.'s be set out explicitly rather than subsumed into a 100 hour or other inspection.[6] Therefore:

(a) Defendant Airways is in violation of 14 CFR § 91.173(a)(2)(v) for failure to keep records of compliance with A.D. 72–22–1 and A.D. 73–21–2;

(b) Defendant Lee is in violation of 14 CFR § 43.5(a)(2) for failure to make a maintenance record entry required by § 43.9 with respect to both lubrication of the uplock landing gear mechanism (A.D. 72–22–1) and inspection and replacement of aircraft fuel line hoses (73–21–2).[7]

(c) Defendant Martin is in violation of 14 CFR § 43.5(a)(2) for failure to make a maintenance record entry required by § 43.9 with respect to lubrication of the uplock landing gear mechanism (A.D. 72–22–1).

7. Defendant Airways is in violation of 14 CFR § 135.43[8] for failure to keep records delineating pilots' aeronautical experiences in sufficient detail to determine their qualifications to pilot aircraft in air taxi operations,[9] failure to keep records of the

---

record involving more than mere inspection: "No appreciable weight added to aircraft." The court considers the enigmatic notation in the flight log "Superseded 2–1–72" to be the equivalent of boilerplate and not determinative of the issue here.

Furthermore, disregarding the issue of evidence of modification or repair affecting the weight and center of gravity, the government offers no argument or evidence that the flight manual was not current. Accordingly, the burden of proving violation of 14 CFR § 91.31(b) has not been borne.

**6.** It may also require that compliance be noted in the logbook of the aircraft rather than in a company work order. These requirements would ensure the pilot that critical pieces of work have been performed. The court is not ready to hold, however, that logbook notation is required by § 91.173 and § 43.9. Those regulations refer only to records and their composition; they do not refer to location of the required records. If defendants had recorded compliance with the applicable A.D.'s and had merely failed to record compliance in the logbook the court would be loathe to impose a civil penalty. However, compliance was not recorded at all with respect to the A.D.'s.

**7.** The government's allegation of violation of § 43.15 by Lee with respect to inspection of the mechanical work is rejected. If the government's contentions are correct i. e. that A.D. maintenance may not be subsumed into maintenance for a 100 hour inspection and that recordation of individual compliance is required in accordance with § 43.9, a provision which does *not* apply to 100 hour and other inspections, then § 43.15 is not applicable to inspections of that maintenance since that provision is expressly applicable *only* to 100 hour and other inspections.

**8.** 14 CFR § 135.43 states in part:

(a) Each certificate holder shall keep at his principal business office and make available for inspection by the Administrator the following:

. . . . .

(4) An individual record of each pilot used by him in operations subject to this part, including the following information:

. . . . .

(iii) The pilot's aeronautical experience, in sufficient detail to determine his qualifications to pilot aircraft in operations subject to this part.

. . . . .

(v) The effective date and class of the medical certificate that the pilot holds.

. . . . .

(vii) The pilot's flight time in sufficient detail to determine compliance with the flight time limitations of this part.

**9.** Initially, it must be noted that one of the government's allegations of violation turns on an insufficiency of information required by § 135.43 in light of § 61.57(d). Section 61.57(d) states that no person shall act as pilot in command of an aircraft carrying passengers at night unless the pilot has completed at least three night takeoffs and landings within the preceding ninety days. Thus the core of the allegation is insufficient recorded information regarding night takeoffs and landings to determine pilot qualifications for night service.

Defendant does not really controvert the absence of this information but disputes any requirement of such detail and protests the applicability of § 61.57(d) to the record-keeping requirements of § 135.43.

Defendant is correct in pointing out the lack of any indication within § 135.43 that the standards of Part 61 are incorporated into § 135.43 record-keeping. However, this objection to the draftsmanship of the regulation, though certainly valid in the abstract, fails in light of countervailing considerations.

effective date and class of pilots' medical certificates, and failure to make these records available.[10]

It is therefore

ORDERED

14 CFR § 61.1 sets the applicability of Part 61, delimiting the "privileges and limitations of [pilot and flight instructor] certificates and ratings." Although Part 61 is ostensibly a survey of conditions and prerequisites to an award of a pilot or flight instructor certificate, it further sets a standard of punctilio for the determination of pilot qualifications. Thus, the pilots must comply with Part 61 to obtain or retain their certificates and ratings, and Airways must record continued compliance with Part 61 dictates so that pilot qualifications within the meaning of § 135.43 are readily observable at the time of inspection by the FAA.

This conclusion is buttressed by the interpretation of the FAA, to which some deference is due. See United States v. Ozark Air Lines, Inc., 419 F.Supp. 795, 798 (E.D.Mo.1976); Cf. General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944); Davis, Administrative Law of the Seventies, § 5.05 (1976). It is also buttressed by a tacit, if not express admission by Kenneth J. Koob of Airways that the then-existing air taxi pilot records were insufficient. See Plaintiff's Exhibit 12.

10. The foregoing analysis of the legal efficacy of defendant's record-keeping under 14 CFR § 135.43 was premised on an examination of the full array of records presented up to the time of trial. A supplemental holding of violation of 14 CFR § 135.43 is premised on the lack of availability of these records at the time of the inspection by the FAA that initiated this proceeding. Some of the records proffered by defendant were made available at the time of the inspection by the FAA. Some were obtained subsequent to the inspection by discovery. Finally, one key document was made available the day of trial. The government thereupon moved for sanctions for failure to produce the document initially at discovery and for failure to comply with Local Rule of Civil Procedure 23B.

The court raises this issue not for the purpose of suppressing introduction of some of defendant's records but for the purpose of testing the availability of these records.

It is clear that Airway's actions present a failure of availability. The regulation itself imposes an affirmative duty on the defendant to "make available for inspection by the Administrator [of the FAA]" the information set out in § 135.43. The court rejects defendant's assertion that the FAA has the duty of requesting each and every record touching upon this information. The duty to make records available is expressly placed on defendant by the wording of the statute and impliedly placed there by the comparative familiarity of defendant with its record system. Ease of access to the relevant records clearly reposes in the person of the defendant.

Furthermore, the duty to make available clearly encompasses within its ambiance the notion that the records must be available at the time of inspection. Records submitted subsequent to this time are not available within the meaning of the regulation. Any other interpretation would require civil litigation and concomitant discovery for the FAA to obtain all relevant records. This course of action is clearly undesirable.

The Clerk shall enter judgment for the plaintiff and against the defendants for a civil penalty[11] in the following amounts:

| | |
|---|---|
| Airways Service, Inc. | $500.00 |
| LeRoy Lee | $250.00 |
| Allen Martin | $250.00 |

11. The court is compelled to make some observations in passing judgment on these defendants. Notwithstanding the jurisdiction reposing in this court, it is particularly an inappropriate forum for disposition of these offenses, hypertechnical as they are. The devotion of time and resources by the parties to this cause and the court have been all out of proportion to the importance of the violations. Not only are the offenses primarily of the type often termed procedural irregularities or technicalities, but they have also been voluntarily remedied by the defendant.

The regulatory scheme involved here tends to be of an esoteric framework more properly in the realm of administrative than judicial expertise. Certainly procedural irregularities such as these are best resolved at an earlier stage of the controversy by the Administrator of the FAA or his representative. It appears that these offenses should be subject to the compromises that the Administrator is empowered to extend by 49 U.S.C. § 1471(a)(2). They should not be subject to personality conflicts, apparently present here, which can turn a technical violation into a "federal case".