**UNITED STATES of America, Plaintiff,**

v.

**ROCKY MOUNTAIN HELICOPTERS, INC., Defendant.**

**Civ. No. 88–C–0034A.**

United States District Court,
D. Utah, C.D.

Jan. 30, 1989.

Richard Parry, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff.

Robert S. Young, Provo, Utah, for defendant.

## MEMORANDUM DECISION

ALDON J. ANDERSON, Senior District Judge.

The government has brought this action to recover civil penalties from defendant Rocky Mountain Helicopters, Inc. ("Rocky Mountain") for violating Federal Aviation Administration (FAA) regulations with respect to the assignment of flight time to flight crewmembers involved in helicopter rescue and evacuation services. A non-jury trial was held December 5–7, 1988. At the conclusion of the trial, the matter was taken under advisement. As will be shown below, the court finds that defendant did not violate the applicable FAA regulation and denies the recovery of civil penalties.

## FACTUAL BACKGROUND

Rocky Mountain Helicopters, headquartered in Provo, Utah, provides helicopters and pilots to hospitals around the country for emergency medical evacuation services ("HEMES"). It operates under an Air Carrier Operating Certificate issued by the FAA under 14 C.F.R. § 135.[1] The government brings this action to recover civil penalties for twenty-four alleged violations of FAA regulations prohibiting the assignment of flight time to crewmembers unless the assignment provides for at least eight consecutive hours of rest during the twenty-four hour period preceding the planned completion of the assignment. These alleged violations occurred between October 1, 1985 and December 6, 1985, at hospitals located in Denver, Colorado, Memphis, Tennessee, and Kansas City, Missouri.

During the time in question, two regulations existed governing flight and duty time. The first regulation, found in 14 C.F.R. § 135.261(b)[2] (hereafter the "old regulation"), provided that:

No certificate holder may assign a flight crewmember, and no flight crewmember may accept an assignment, for duty during flight time unless that assignment provides for at least 10 consecutive hours of rest during the 24 hour period preceding the planned completion of the assignment.

---

1. Companies operating under this Operating Certificate are referred to as "certificate holders."

2. Unless otherwise specified, all sections cited in this opinion refer to Volume 14 of the Code of Federal Regulations.

Rocky Mountain Helicopters operated under an exemption to § 135.261(b) which permitted it to make assignments providing flight crewmembers with eight consecutive hours of rest, instead of the ten hour requirement found in the regulation.

New regulations were subsequently enacted, 14 C.F.R. §§ 135.263(a) and 135.-271(d) (hereafter the "new regulations"), with an effective date of October 1, 1985, that were intended to replace § 135.261(b). The new regulations provide that:

§ 135.263(a) A certificate holder may assign a flight crewmember and a flight crewmember may accept an assignment for flight time only when the applicable requirements of §§ 135.263 through 135.-271 are met.

§ 135.271(d) Each flight crewmember must receive at least 8 consecutive hours of rest during any 24 consecutive hour period of a HEMES assignment. A flight crewmember must be relieved of the HEMES assignment if he or she has not or cannot receive at least 8 consecutive hours of rest during any 24 consecutive hour period of a HEMES assignment.

The government proffered evidence, consisting of flight records kept by pilots employed with the defendant, showing that several pilots did not receive eight consecutive hours of rest on flight assignments made between October 1 and December 6, 1985.

## DISCUSSION

The government claims that these records conclusively establish that Rocky Mountain violated FAA regulations regarding rest during flight time. It claims that the new regulations are merely a codification of the old regulation as modified by the Rocky Mountain exemption, and that the flight records establish a violation of either of the regulations.

Defendant argues that its conduct was governed by § 135.261(b), not the new regulations. It contends that compliance is less strenuous under the old regulation because it charges certificate holders only with the duty of *providing* a plan whereby pilots receive the required hours of rest, whereas the new regulation provides that flight crewmembers *must be relieved* of an assignment unless the crewmember will receive eight consecutive hours of rest during any twenty-four hour assignment. Rocky Mountain claims that its plan provided the requisite hours of rest, in that pilots were required to call in relief help whenever it became apparent that they would not receive at least eight consecutive hours of rest during an assignment. Under defendant's interpretation of the regulation, the flight records introduced by the government shows that the pilots, not Rocky Mountain, violated § 135.261(b), by going contrary to defendant's established policies.

To determine whether or not the government is able to recover civil penalties against Rocky Mountain, the court must resolve the following: 1) which regulation governed defendant at the time of the alleged violations; 2) what standard of conduct this regulation imposed upon the defendant; and 3) whether defendant violated that standard of conduct.

### 1. The Regulaton Governing The Defendant.

■ The government argues that the new regulation governed defendant's conduct and that it was merely a codification of defendant's existing exemption under the old regulation. Defendant contends that the new regulation was not a codification of its existing exemption, but a new standard to be applied to certificate holders. Defendant further argues that it did not elect to begin compliance with the new regulation until after the alleged violations occurred.

Certificate holders could begin compliance with the new regulations on one of the following occasions: (1) October 1, 1985; (2) October 1, 1986; or (3) on the first day of any calendar month between October 1, 1985 and October 1, 1986. 50 Fed.Reg. 29306 (1985). It was specifically provided that the new regulation would become effective on October 1, 1985,

at which time any certificate holder who wishes to may begin complying with the

new flight time and rest requirements. However, the final compliance date of this rule is delayed until October 1, 1986, in order to allow certificate holders ample time to reschedule and bring their operations into full compliance with this rule.

*Id.* at 29319. There is no indication that the FAA intended to enforce the regulation against those who begin compliance earlier than October 1, 1986. Implicit in the language cited above is that the FAA will not hold certificate holders responsible for violations of the new regulations until October 1, 1986, so that they will have "ample time to reschedule and bring their operations into full compliance...." Accordingly, this court finds that §§ 135.263(a) and 135.271(d) were not enforceable until October 1, 1986.

Even if the new regulations were enforceable as to those who began formal compliance with its provisions before October 1, 1986, the government has not shown, by a preponderance of the evidence, that defendant formally began compliance with the new regulation on October 1, 1985. On October 8, 1985, the defendant sent a letter to the FAA requesting the extension of its exemption under the old regulation. The exemption had routinely been granted in the past, and defendant reasonably believed that it would be able to continue operating under the exemption until it began formal compliance with the new regulations. This request to extend the exemption clearly indicates that defendant did not intend to begin compliance with the new regulation on October 1, 1985.

In November 1985, the FAA responded to defendant's request for the continuing exemption by explaining that it was the FAA's position that § 135.271 provided the relief previously granted by Rocky Mountain's exemption under the old regulation. At this time, defendant began to instruct its pilots on compliance with the new regu-

lations. The government points to these instructions as evidence that defendant began formal compliance with the new regulation before the alleged violations occurred. However, this internal memorandum is insufficient to prove that Rocky Mountain intended to formally comply with § 135.271 as of the date of the violations.

First, it was not distributed to the pilots until January 7, 1986, after the violations alleged in the Complaint occurred. Second, defendant was merely doing what it was instructed to do under the new regulations: use the time between October 1, 1985 and October 1, 1986 to "reschedule and bring their operations into full compliance with th[e] rule[s]." 50 Fed.Reg. at 29319.

Thus, the court finds that §§ 135.263 and 135.271(d) were not enforceable against Rocky Mountain until October 1, 1986. Further, even if the court found that the regulations could be enforced against a certificate holder who began formal compliance with the regulation earlier than the final compliance date, the evidence does not show by a preponderance ˙that Rocky Mountain elected to comply with the regulation during the time of the alleged violations. Therefore, defendant's conduct during the time of the alleged violations was governed by § 135.261(b).

### 2. *The Standard Of Conduct Required By § 135.261(b).*

■ The next question to be decided is what standard of conduct is imposed on Defendant by § 135.261(b).[3] The government argues, in essence, that the defendant is strictly liable for any violations of the regulation by any of its pilots, regardless of the circumstances. Defendant argues that § 135.261 obligates it only to provide a plan that gives each pilot eight hours of rest during any twenty-four hour assignment, and that it is not liable if the pilots independently violate company policy and FAA regulations by flying when it was

3. The main portion of the Complaint asserts that defendant violated § 135.271(d) of the new regulation. In addition, the FAA inspection and surveillance records, as well as a letter from the FAA to Rocky Mountain regarding the alleged violations, charge the defendant only with the

violation of the new regulations. However, the government did allege, almost as an afterthought, that defendant violated § 135.261(b) as modified by the defendant's exemption. Therefore, the court analyzes the defendant's conduct in light of § 135.261(b).

apparent they would not get the required rest.

A reviewing court has the power to interpret administrative regulations and must decide whether the elements of proof necessary to establish a violation of a regulation have been met. *Martin v. Heckler,* 617 F.Supp. 1078, 1079 (S.D.Tex.1985). Although the FAA's construction of its own regulations should be given due deference (*See United States v. Ozark Air Lines, Inc.,* 419 F.Supp. 795, 798 (E.D.Mo.1976)), a court must "look at the plain meaning of the words used.... A regulation cannot be construed to mean what an agency intended but did not adequately express." *Usery v. Kennecott Copper Corp.,* 577 F.2d 1113, 1119 (10th Cir.1977). "[W]here there is an interpretation of an ambiguous regulation which is reasonable and consistent with the statute, that interpretation is to be preferred." *United Telecommunications, Inc. v. C.I.R.,* 589 F.2d 1383, 1390 (10th Cir.1978) *cert. denied* 442 U.S. 917, 99 S.Ct. 2839, 61 L.Ed.2d 284 (1979).

In the old regulation, it charges the certificate holder with the duty to not assign a flight assignment unless it "provides for at least [8] consecutive hours of rest during the 24–hour period preceding the planned completion of the assignment." § 135.261(b) (as modified by defendant's exemption). This court does not read the operative term "provides" as imposing strict liability upon Rocky Mountain for *any* violation of the eight hour rest requirement. "Provides" is not normally interpreted to mean "shall require," but rather "to furnish, supply, or make available." *See Usery v. Kennecott Copper Corp.,* 577 F.2d at 1119. Applying the preferred definition to § 135.261(b), defendant was under a duty to make sure that each flight assignment supplied crewmembers with at least eight consecutive hours of rest. If each assignment met that requirement, then Rocky Mountain will not be liable even if pilots violated the policy set forth by the company.

The fact that § 135.271(d) strengthened the language of the rest requirement to read that "[a] flight crewmember *must be relieved* ... if he or she has not or cannot receive at least 8 consecutive hours of rest during any 24 consecutive hour period ...*" (emphasis added) indicates that perhaps the FAA was of the opinion that the old regulation did not require the desired compliance sought by the agency.

Thus, the standard of conduct the defendant was required to satisfy was to ensure that each twenty-four hour flight assignment provided for eight consecutive hours of rest. If defendant's flight assignments provided for eight consecutive hours of rest, then it did not violate § 135.261(b) and is not liable for the penalties sought to be recovered by the government.

### 3. *Rocky Mountain's Compliance With § 135.261(b).*

During the time of the alleged violations, the defendant's operations manual provided that no flight crewmember would be given an assignment which does not permit at least ten consecutive hours (later changed to eight) of rest during the twenty-four hour period preceding the planned completion of that assignment. The evidence further showed that in the event it became apparent that a crewmember would not receive eight hours of rest during an assignment, he was to call for relief help. The defendant provided backup crewmembers, on-call twenty-four hours a day, that were available to replace a crewmember when it became apparent that the required rest would not be received unless the crewmember was relieved of his or her assignment. Thus, defendant met the requirements of § 135.261(b) by making flight assignments that provided eight consecutive hours of rest for flight crewmembers.

Although the government points to the flight records in evidence and argues that the defendant did indeed violate § 135.261(b), this court cannot agree. Any violations of the old regulation that may have occurred were independent actions taken by the pilots contrary to defendant's established policies and operation guidelines. These violations cannot be imputed

to the defendant for the purpose of recovering civil penalties.[4]

## CONCLUSION

The court finds that 14 C.F.R. §§ 135.263 and 135.271(d) were not enforceable against Rocky Mountain until October 1, 1986. Even if the new regulations could be enforced against a certificate holder who began formal compliance with the regulation earlier than the final compliance date, the evidence does not show by a preponderance that Rocky Mountain elected to comply with the new regulations during the time of the alleged violations. Therefore, Rocky Mountains's actions will be held to the standard of conduct found in § 135.261(b).

The standard of conduct § 135.261(b) imposed upon certificate holders was to ensure that each twenty-four flight assignment provided for eight consecutive hours of rest. Since defendant's flight assignments provided for eight consecutive hours of rest during a twenty-four hour flight assignment, it did not violate the old regulation and is not be liable for the penalties sought to be recovered by the government. Consequently, judgment must be granted for the defendant.

---

**4.** The language of the new regulation is probably sufficient to hold the defendant liable for acts of its pilots even if they violated company procedures. However, the standard of conduct found in the old regulation is insufficient to impose strict liability on the defendant for the pilots' independent actions.