M. Marshall LANDY, Trustee, Plaintiff,

v.

FEDERAL AVIATION ADMINISTRA-TION, United States of America, William E. Morgan, Director, Eastern Region, Federal Aviation Administration and Charles Fedderwitz, Inspector, Federal Aviation Administration, Defendants–Appellees,

v.

M. Marshall LANDY and International Aircraft Leasing Inc., Additional Defendants–Appellants,

Air–Trans Ltd., J. D. Smith Inter–Ocean Inc., and Boeing 707 Aircraft, N 9985F, in rem, Additional Defendants on Counterclaims.

Nos. 702, 1113, Dockets 79–6212, 79–6220.

United States Court of Appeals, Second Circuit.

Argued March 31, 1980.

Decided Nov. 26, 1980.

Rehearings and Rehearing En Banc Denied Feb. 5, 1981.

**144**

Frank H. Granito, Jr., New York City, (Speiser & Krause, P.C., New York City, on the brief), for additional defendant–appellant, M. Marshall Landy.

Howard F. Cerny, New York City, for additional defendant–appellant, International Aircraft Leasing Inc.

Michael H. Dolinger, Asst. U.S. Atty., New York City (Robert B. Fiske, Jr., U.S. Atty., S.D.N.Y., Peter C. Salerno, Asst. U.S. Atty., New York City, on the brief), for defendants–appellees.

Before VAN GRAAFEILAND and KEARSE, Circuit Judges, and GOETTEL, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

In this action brought by the Federal Aviation Administration under sections 901 and 903 of the Federal Aviation Act, 49 U.S.C. §§ 1471, 1473, the Government alleged that M. Marshall Landy, International Aircraft Leasing, Inc. (IAL) and Air–Trans Ltd. jointly and severally operated an aircraft for compensation or hire in air commerce and that J. D. Smith Inter–Ocean, Inc. (Smith) acted as agent for IAL, knowing that the aircraft was to be operated for compensation or hire.[1] The Government alleged further that these parties jointly and severally violated section 610 of the Federal Aviation Act, 49 U.S.C. § 1430, and Federal Aviation Regulation 121.3(f), 14 C.F.R. § 121.3(f).[2]

Section 610(a)(4), (5) provides in substance that it shall be unlawful for any person to operate as an air carrier without an air carrier operating certificate or to operate an aircraft in air commerce in violation of any FAA rule, regulation or certificate. Regulation 121.3(f) provides, with certain inapplicable exceptions, that no person may engage in the carriage of persons or property for compensation or hire in air commerce without, or in violation of, a commercial operator operating certificate and appropriate operations specifications issued pursuant to the Regulations.

Section 901(a) provides in part that any person who violates the safety requirements of the Act or any rules or regulations issued thereunder shall be subject to a civil penalty of not to exceed $1,000 for each violation and that, if any violation is a continuing one, each day of violation shall constitute a separate offense. Section 903(b)(1) provides that proceedings for collection of the penalties shall conform as nearly as may be to civil suits in admiralty except that, if the value in controversy exceeds $20, either party may demand trial by jury of any issue of fact. Jury trial was demanded in this case.

---

* Hon. Gerard L. Goettel, District Judge of the Southern District of New York, sitting by designation.

1. Landy started the litigation, alleging in his complaint that the government had wrongfully seized his plane and seeking injunctive relief, damages, and a finding that the statutes authorizing seizure, 49 U.S.C. § 1471(b) and 1473(b)(2), are unconstitutional. IAL intervened in the action as lessee of the aircraft.

The Government's causes of action were asserted as counterclaims. However, by agreement of the parties, the trial proceeded as if the Government was the plaintiff.

2. The Federal Aviation Regulations are contained in Volume 14 of the Code of Federal Regulations and specific regulations will hereafter be designated only by reference to the Code.

Air–Trans, a Bahamian corporation, was not served with the Government's pleadings. The case went to trial against the remaining three defendants and resulted in a jury finding that each of the defendants operated the plane for compensation or hire. Additional factual findings were made in response to special interrogatories, and the court thereafter entered judgment assessing a penalty of $430,000 jointly and severally against Landy and IAL and a penalty of $20,000 against Smith. Smith has compromised its differences with the Government, and Landy and IAL have appealed. Because of fundamental errors in the proceedings below, the judgment against Landy and IAL must be reversed and a new trial granted.

Although the facts are complicated and much in dispute, the basic issues in the case may be simply stated. In 1976, Landy purchased a Boeing 707 airplane from Lufthansa Airlines and had it converted from a passenger to a cargo plane. He then leased the plane to IAL for one year. Between May and August of 1977, IAL subleased the plane on a number of occasions, principally for the transportation of livestock belonging to the sublessees. Many of these subleases were arranged by Smith, a freight forwarding company. Apparently the crews on all of the flights were furnished by Air–Trans, whose services were usually secured through the agency of Smith.

It is the Government's contention that the "subleases" were not in fact leases, in that IAL did not turn over possession and control of the plane to the "lessees". Instead, the crews were furnished by Air Trans, allegedly an alter ego of Landy, and fuel and maintenance were provided by IAL. The Government contends that, in actuality, IAL and Landy were operating or causing the plane to be operated for compensation or hire and therefore were subject to the rigorous requirements of Part 121 of the Federal Aviation Regulations,

which applied to such commercial operations. See 14 C.F.R. § 121.1(a)(5).

The Government called IAL's president as its witness to establish the alleged violation of certain Part 121 regulations. It also introduced evidence of alleged additional violations through the testimony of two government employees who inspected the plane on August 2, 1977 and August 19, 1977. Appellants contend that the Part 121 regulations are inapplicable. They assert that they were not operating the plane during the subleases and that therefore the less onerous "General Operating Rules" of Part 91 of the Federal Aviation Regulations should control, rather than the more rigorous requirements of Part 121. In brief, then, the issues at trial were whether "subleasing" of the plane was a subterfuge intended to disguise what was actually a commercial operation and, if so, who was the commercial operator during each of the flights and what Part 121 regulations did he violate.

A determination of these issues would require at the outset factual findings as to what flights were made and the circumstances surrounding each. No such findings were made. The district judge elicited factual findings by way of written interrogatories which, for convenience of reference, are set forth in full in an appendix to this opinion.[3] The first three interrogatories ask simply whether the defendants operated the aircraft for compensation or hire, without any reference to the time, the place, or the flight in which the operation took place. Under the court's instructions, the jury's affirmative answer to the first three interrogatories required it to find that, if one of the three defendants failed to meet any of the requirements made the subject of the remaining thirty–five interrogatories, the other two defendants would be guilty of the same violations. Like the first three interrogatories, the re-

---

3. The special interrogatories were proposed by the Government. In parentheses at the end of most of the interrogatories is the Aviation Regulation which supposedly gave rise to the factual inquiry but which the jury was instructed to ignore. Although the Government's counterclaims alleged a failure to comply with Part 121, several of the interrogatories were based upon regulations from other Parts.

maining thirty–five pinpointed neither time, place, nor flight. Moreover, the jury was not instructed to consider whether Air Trans, the company whose employees actually flew the plane, had complied with any of the requirements in question.

To make matters worse, the questions were paraphrasings of Federal Aviation Regulations that were neither read nor explained to the jury. As a result, there was no way in which the jury could make intelligent responses. For example, Interrogatory No. 4 inquired whether any of the defendants "failed to convey operation specification information to their employees." This was the district court's paraphrase of 14 C.F.R. § 121.75(a), which provides that "[e]ach certificate holder shall keep each of its employees informed of the provisions of its operations specifications that apply to the employee's duties and responsibilities." Operations specifications have to do with such things as the types of aircraft authorized for use, en route authorizations, areas of operation, inspection requirements, procedures for control of aircraft weight and balance, etc. 14 C.F.R. § 121.45(b). None of this was explained to the jury. Yet the jury was permitted to find that all three defendants violated the regulation's requirement, including Landy who apparently had only one employee, his secretary.

Interrogatory No. 10 inquired whether the defendants "[f]ailed to get approval to use aircraft for commercial operations...." This interrogatory had reference to 14 C.F.R. § 121.163 which provides that a commercial operator may not operate an aircraft not previously proven for use in commercial operations "unless an aircraft of that type has had, in addition to the aircraft certification tests, at least 100 hours of proving tests," at least 10 hours of which must be flown at night. The jury was instructed to make a factual finding on this point without the slightest knowledge as to what the pertinent regulation required.

A similar lack of definition is found throughout the interrogatories. One wonders, for example, how the jury, to whom not a single Aviation Regulation was read, could be expected to know the "airworthiness requirements of Chapter I of Title 14, Code of Federal Regulations" (Interrogatory No. 9), which "instruments [were] required by the Federal Aviation Regulations" (Interrogatory No. 14), the "requirements of Federal Regulations (Subsection (a), (b)(1) through (9) and (c) of Section 121.369)" (Interrogatory No. 22), or what "aircraft repair [is] proscribed (sic) by Federal Regulations" (Interrogatory No. 30).

The jury was required to find in several instances whether some condition or state of affairs was "proper" or "acceptable." See Interrogatories 6, 8, 17, 29, 31, and 35. In the context of the litigation, these terms obviously were intended to be synonymous with "legal" or "in compliance with government regulations", see City of Mt. Vernon v. Mount Vernon Trust Co., 270 N.Y. 400, 407-08, 1 N.E.2d 825 (1936), and propriety must be determined by the content of the regulations. See United States v. Frontier Airlines, Inc., 563 F.2d 1008, 1011–12 (10th Cir. 1977). Without judicial guidance as to the regulations' contents, the jury could not make an intelligent response to any of these inquiries.

A number of the interrogatories paraphrased regulations that were not applicable to the facts. Interrogatory No. 6 is based upon 14 C.F.R. § 121.123, and Interrogatory No. 7 is derived from 14 C.F.R. § 121.125. These two sections refer only to the showing that a commercial operator must make who seeks route and area approval. See 14 C.F.R. § 121.111. This case does not involve an application for route or area approval. Moreover, section 121.123 does not require an applicant for approval to show that it maintains proper service and maintenance facilities; it need only show that competent personnel and adequate facilities for service and maintenance are available. Interrogatory No. 12 which deals with "emergency evacuation procedures" is based upon 14 C.F.R. § 121.291. This section is applicable to passenger planes with a seating capacity of more than forty–four passengers, not to cargo planes constructed to carry cows and horses. Id. § 121.291(a).

■ There is no need to belabor the obvious. The factual findings necessary to support the severe penalty imposed below could not be made without reference to the applicable Aviation Regulations, and the jury was not instructed as to what those regulations were. Rule 49(a) of Fed.R.Civ.P., which deals with special verdicts and interrogatories, provides that the court shall give the jury such explanation and instruction as is necessary to enable the jury to make its findings. If, as in this case, an interrogatory is a mixed question of fact and law, the jury must be instructed as to the legal standards they are to apply. *Kissell v. Westinghouse Electric Corp.*, 367 F.2d 375, 376 (1st Cir. 1966); *Scott v. Isbrandtsen Co.*, 327 F.2d 113, 119 (4th Cir. 1964); *Great American Insurance Co. v. Horab*, 309 F.2d 262, 266 (8th Cir. 1962); *Jackson v. King*, 223 F.2d 714, 718 (5th Cir. 1955). Because the jury below was left completely at sea concerning the applicable legal standards, its findings did not constitute a proper and adequate factual basis for the fine imposed.

■ Appellants were also prejudiced by the district court's failure to have the jury determine as a question of fact which violations, if any, occurred during which flights. It was improper for the court, six months after the jury had concluded its deliberations, to "direct a verdict" as to the number of flights and find that the violations alleged had occurred on each flight. The fact that a government inspector found no life vests in the plane in August did not establish that there were no life vests aboard when a flight was made in May. When a court is permitted to impose a fine of up to $1,000 for each violation, proof of the violation should not be a matter of inference or conjecture. The Government must establish the violation by a preponderance of the evidence. *Aircrane, Inc. v. Butterfield*, 369 F.Supp. 598, 611 (E.D.Pa.1974) (three–judge court). Instead of "throwing the book" at appellants, the Government should limit its claims on retrial to those it is prepared to prove.

Closely allied to the foregoing, and equally erroneous, was the court's response to the jury's question concerning derivative liability. During its deliberations, the jury inquired of the court that "if they find against more than one defendant on Questions 1, 2 and 3, then if one is guilty in any question, 4 to 39, (*sic*) are all guilty . . . ?"[4] Although the court's response was not a model of clarity, its ultimate instruction was "Yes". This meant in substance that if any of the three defendants failed to obtain air route authority, maintain proper service facilities, maintain a flight following system, or comply with any of the numerous other regulations in issue, the other defendants would be liable for this failure despite the fact that they or Air–Trans, the actual physical operator of the plane, may have been in compliance with the regulation in question.

■ This cannot be the law. If appellants are to be treated as joint operators of Landy's plane, they should be entitled to the advantages that accrue to a joint venture, not charged only with the disadvantages. *See, e. g., Haas v. 653 Leasing Co.*, 425 F.Supp. 1305, 1315–17 (E.D.Pa.1977). Where as here we are concerned primarily with alleged errors of omission, if the joint venture as such complied with a regulatory requirement, its members should not each be held derivatively liable because one of them, separately and individually, failed to comply. We see no reason, for example, why each defendant should be required to separately maintain a flight following system nor any reason why all three defendants should be held liable for the failure of one to do so.

■ Appellants' remaining contentions require little comment. There is no merit in the argument that the Government's

---

**4.** Earlier in his charge, the district judge had instructed the jury that it must consider each defendant separately and must determine whether any or all of the defendants operated or caused the operation of the airplane for compensation or hire and "whether any or all of them did so without a commercial operator's certificate and without meeting operator's specifications issued by the Federal Aviation Administration."

claims should have been dismissed on the ground that the Federal Aviation Administration was illegally invading the exclusive regulatory province of the Civil Aeronautics Board. The Administrator of the Federal Aviation Administration is empowered by section 601 to promulgate rules, regulations, and standards to promote flight safety in air commerce, *Somlo v. CAB*, 367 F.2d 791, 792 n.1 (7th Cir. 1966); and a proper method of enforcement is by suit under section 903(b)(1). *Aircrane, Inc. v. Butterfield, supra*, 369 F.Supp. at 610–13. There is no unconstitutional ambiguity in the definition of "commercial operator" in 14 C.F.R. § 1.1. *See* 369 F.Supp. at 612.

Landy's claim that the Government's seizure of his plane violated due process was substantially abandoned in the trial court. Landy's counsel proposed the realignment of parties that put the Government in the position of plaintiff and informed the court that "[w]e are not here to try the issue of seizure . . . ." He did not oppose the Government's motion to dismiss at the close of the case. The notice of appeal to this Court was taken by "additional defendant" Landy from the judgment "in favor of the United States of America against additional defendants, including M. Marshall Landy." There is no reference in the notice of appeal to that portion of the judgment dismissing the complaint of the plaintiff M. Marshall Landy. A retrial on the issue of illegal seizure will not be directed.

Evidentiary and procedural rulings that may not recur on retrial need not now be reviewed.

The judgment appealed from, excepting those portions which award judgment against J. D. Smith Inter–Ocean, Inc. and dismiss the complaint of the plaintiff M. Marshall Landy, is reversed, and the case is remanded to the district court for retrial.

APPENDIX

1849

SPECIAL VERDICT.

1. Do you find by a preponderance of the evidence that defendant M. Marshall Landy operated the aircraft for compensation or hire?

Yes
Yes or No

2. Do you find by a preponderance of the evidence that defendant International Aircraft Leasing, Inc. operated the aircraft for compensation or hire?

Yes
Yes or No

3. Do you find by a preponderance of the evidence that defendant J.D. Smith Inter-Ocean, Inc. operated the aircraft for compensation or hire?

Yes
Yes or No

(If your answer is "No" for each defendant, then your job is finished. Do not go on. If your answer is "Yes" for any or all of the defendants, then you are to answer the remainder of the questions with respect to each defendant for which you answered "Yes" above.)

Do you find by a preponderance of the evidence that, while operating the aircraft, any of the defendants:

4. Failed to convey operation specification information to their employees (Section 121.75)?

Landy __Yes__ I.A.L. __Yes__ J.D. Smith __Yes__
     Yes or No        Yes or No              Yes or No

5. Failed to obtain air route authority from the Federal Aviation Administrator (Section 121.113):

Landy __Yes__ I.A.L. __Yes__ J.D. Smith __Yes__
     Yes or No        Yes or No              Yes or No

6. Failed to maintain proper service and maintenance facilities (Section 121.123)?

Landy __Yes__ I.A.L. __Yes__ J.D. Smith __Yes__
     Yes or No        Yes or No              Yes or No

7. Failed to maintain a flight following system (Section 121.125(a))?

Landy __Yes__ I.A.L. __Yes__ J.D. Smith __Yes__
     Yes or No        Yes or No              Yes or No

1850

SPECIAL VERDICT

8. Failed to have a proper manual and thus, did not convey proper ground and flight operation information to its personnel nor have a copy of such a manual available in the aircraft (Sections 121.133(b), 121.137, 131.139)?

Landy __Yes__ I.A.L. __Yes__ J.D. Smith __Yes__

9. Failed to meet the airworthiness requirements of Chapter 1 of Title 14, Code of Federal Regulations (Section 121.153(a)(2))?

Landy __Yes__ I.A.L. __Yes__ J.D. Smith __Yes__

10. Failed to get approval to use aircraft for commercial operations (Section 121.163)?

Landy __Yes__ I.A.L. __Yes__ J.D. Smith __Yes__

11. Operated aircraft in a manner which did not permit entry by a crew member into the cargo compartment for fire fighting purposes during the flight (Section 121.287)?

Landy __Yes__ I.A.L. __Yes__ J.D. Smith __Yes__

12. Operated the aircraft without demonstrating emergency evacuation procedures?

Landy __Yes__ I.A.L. __Yes__ J.D. Smith __Yes__

13. Operated the aircraft without demonstrating simulated ditching procedure (Section 121.291(b))?

Landy __Yes__ I.A.L. __Yes__ J.D. Smith __Yes__

14. Operated the aircraft while certain instruments required by the Federal Aviation Regulations were not in operable condition (Section 121.30)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

15. Operated the aircraft when its emergency equipment had not been inspected regularly in accordance with established inspection procedures (Section 121.309)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

16. Operated the aircraft when it did not have an approved cockpit check list (Section 121.315)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

### 1851

### SPECIAL VERDICT

17. Operated the aircraft without equipping it with sufficient and/or proper life vests, life rafts, or emergency locator beacon for the occupants of the aircraft (Section 121.339)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

18. Operated the aircraft while it did not carry an operable flight recorder (Section 121.343)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

19. Operated the aircraft while it did not carry an operable voice recorder (Section 121.359)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

20. Operated the aircraft while it did not carry an operable ground proximity glide slope deviation warning system (Section 121.360)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

21. Operated the aircraft when they did not have an inspection program and a program covering other maintenance, preventive maintenance, and alterations (Sections 121.365 and 121.367)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

22. Operated the aircraft without the guidance of a manual containing the requirements of the Federal Regulations (Subsection (a), (b)(1) through (9) and (c) of Section 121.369)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

23. Operated the aircraft without a system of continuing analysis and surveillance (Section 121.373(a))?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

24. Operated the aircraft without a training program for maintenance personnel (Section 121.375(a))?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

25. Operated the aircraft without an evacuation assignment for the aircraft crew (Section 121.397)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

### 1852

### SPECIAL VERDICT

26. Operated the aircraft without requiring either initial or recurrent training for crew members (Section 121.403)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

27. Operated the aircraft when they did not administer a record, appropriate crew qualifications, line and proficiency checks (Section 121.431-434 and 437-453 (Subpart V))?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

28. Operated the aircraft when they did not have a malfunction and defect record system (Section 121.701)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

29. Operated the aircraft without a proper inspection program (Section 91.217)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

30. Failed to have aircraft repair as proscribed by Federal Regulations (91.165)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

31. Failed to use an acceptable log book format with respect to his maintenance records (43.13(a))?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

32. Failed to repair co-pilot's RMI needle (Sections 91.165, 43.13(a) and (b))?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

33. Failed to carry approved life vests in aircraft (Section 91.189(b)(1))?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

34. Operated with the number 2 engine fuel heat circuit valve circuit breakers inoperative (Section 91.165)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

### 1853

### SPECIAL VERDICT

35. Operating aircraft with an unacceptable life raft aboard, i.e., placards with respect to instructions for operation were in German (Section 91.189(b)(2) and 91.193(b)(3)):

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

36. Operating aircraft without emergency locator transmitor (Section 91.52)?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

37. Operated aircraft while emergency manual temperature control access area was blocked?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

38. Operating aircraft while main landing gear view windows were blocked?

Landy ___Yes___ I.A.L. ___Yes___ J.D. Smith___Yes___

GOETTEL, District Judge (dissenting):

The major issue at trial was whether Landy, IAL and Smith were operating aircraft for compensation or hire. They contended they were not; their basic assertion

was that Landy had leased the plane to IAL, who then subleased it to customers who used it to ship their own goods. They never took the position that they were complying with the regulations imposed upon carriers for hire. The Government contended that the leasing arrangement was a subterfuge intended to disguise a commercial operation and that the more stringent requirements of Part 121 applied.

In order for the jury to determine whether the defendants had operated the plane for hire, the district court elicited findings by way of written interrogatories. The jury found that each of the defendants was operating the aircraft for hire. Moreover, in making such findings, the jury implicitly found that these parties were involved in a joint venture.[1] Evidence from the record amply supports this determination.[2]

The majority opinion, however, states that these interrogatories were insufficient because they ask simply whether the defendants had operated the aircraft for compensation or hire, without reference to the time, the place or the flight in which the operation took place. I do not agree that it was necessary for these interrogatories to make reference to the time, the place or the flight. After establishing the details of the manner in which the plane had been operated by the defendants, it was sufficient to ask the jury whether the defendants' conduct constituted a hiring out of the airplane. Then, in order to establish liability, it was only necessary to show that flights were made under this scheme. The district court's finding concerning the number of flights made under this arrangement was proper. Flight briefing alerts prepared by the New York Metropolitan Transportation Authority provided uncontroverted evidence that on eighteen flights the plane had transported shipper's cargo under this arrangement. Also, Harvey M. Coates of Smith testified to at least three additional cargo carrying trips.

The trial court also utilized special interrogatories in order to obtain findings from the jury as to whether the defendants had violated specific provisions of the FAA regulations. Since these special interrogatories were paraphrasings of the FAA regulations, the jury's special verdicts cannot stand unless three requirements are met. First, the way in which the regulation is paraphrased must not prejudice the defendants. Second, the jury must understand what is being asked. (The interrogatory must be self–evident, or information available from the record must allow the jury to understand what the regulation requires.) Third, the jury must have sufficient information concerning the conduct of the defendants on which to base their decision.

As to the form of such interrogatories, the trial court has broad discretion, provided that the questions asked are adequate to obtain a jury determination on the factual issues essential to judgment. *See Houston Chronicle Publishing Co. v. United States*, 481 F.2d 1240 (5th Cir. 1973), *cert. denied*, 414 U.S. 1129, 94 S.Ct. 867, 38 L.Ed.2d 754 (1974); *Eastern Air Lines, Inc. v. American Cyanamid Co.*, 321 F.2d 683 (5th Cir. 1963).

1. Since the actions of all three defendants in combination were necessary in order to operate the plane for hire, the jury's verdict that all three had operated the plane for hire implies the finding of a joint venture.

2. Initially, the record established an intimate relationship between Landy and Air–Trans, the company that supplied the pilots and crews for the flights. Henry Wharton, the president of Air–Trans, had acted as Landy's agent during the purchase of the aircraft, in attempting to gain repossession of the plane from IAL, and during the period in which Landy was preparing the aircraft for a certificate of airworthiness. Further, Landy's personal secretary had signed Air Trans checks to pay crew members for flying the plane. Secondly, the record demonstrated that the defendants had not turned over operational control of the aircraft to the sublessees. Between them, IAL and Smith provided maintenance, fuel, auxiliary services, loading and unloading and refitting of the plane. The shipper was responsible only for delivery of his cargo to the airport at a specified time and for paying one lump sum to Smith. Finally, evidence that these subleases were a mere sham was provided by FAA inspectors who testified that several of the subleases had overlapping dates and that one of the leases had no ending date.

In those instances where the regulations required the presence of specific equipment or procedures, the defendants were not prejudiced since the special verdict did pass on the essential elements of the regulations. For example, special interrogatory number eighteen asks whether the defendants operated an aircraft while it did not carry an operable flight recorder. It is clear that this summary allows the jury to pass on the essential requirements of 14 C.F.R. § 121.-343.[3] In fact, the omission of additional technical requirements could only benefit the defendants.[4]

The record also demonstrates that the jury was provided with sufficient information to understand the nature of those interrogatories that were not self-evident and to make intelligent responses concerning the conduct of the defendants. John S. Burns of IAL, the company that had day-to-day operational control over the aircraft, explained the nature and function of particular procedures and equipment that were the subject of the special interrogatories. He then gave uncontroverted testimony that those procedures and equipment were not present or in operable condition aboard the airplane. Further, FAA inspectors, who also explained the nature and function of the equipment to the jury, testified that an inspection of the plane revealed that certain equipment was missing or inoperable.

I agree with the majority that in those instances where it was necessary for the jury to find that the airplane was not in compliance with a legal standard, there was no adequate basis on which to find a viola-

tion unless the standard was first explained. I also agree with the majority, of course, that the defendants cannot be held liable under those regulations that were applicable to passenger aircraft only, or under those regulations that apply only to a commercial operator who seeks route and area approval.[5]

I do not agree with the majority, however, that under the court's instructions, the jury's affirmative answers to the first three interrogatories required it to find that if one of the three defendants failed to meet any of the requirements made the subject of the remaining thirty five interrogatories, then the other two would be liable for the same violation, despite the fact that they had complied. I do not see, in the jury's verdict or the court's application of it, that a failure of any defendant to comply with a regulation would make the other defendants liable for the failure, despite the fact that *they* had complied. If *any* of them complied with the regulation, the aircraft would be in compliance and *none* of them would be responsible. Conversely, if there was a total failure of compliance, since they acted jointly, all would be responsible, regardless of who had the primary obligation.

In dealing with the penalties to be imposed, in order to make a case (either per flight or per day[6]), it should not be incumbent on the Government to establish by direct evidence that the specific conditions involved existed on each day or each flight. It is unreasonable to expect the FAA to inspect an aircraft continually. Since these defendants never brought the aircraft into

---

3. The FAA regulations of flight recorders provide in part:

    (a) No person may operate a large airplane that is certified for operations above 25,000 feet altitude or is turbine engine powered, unless it is equipped with one or more approved flight recorders that record data from which the following information may be determined within the ranges, accuracies, and recording intervals specified in Appendix B of this Part . . . .
    14 C.F.R. § 121.343.

4. Had the defendants presented evidence that the plane was equipped with a flight recorder,

the jury might have answered "no" to interrogatory eighteen, even though the defendants had not complied with the strict requirements of section 121.343.

5. Since the fine administered by the court is well below the total possible fine, it may well be that the district court took this into account in assessing the penalty.

6. Title 49 U.S.C. § 1471(a) provides, with respect to continuing violations, that "each day" is a separate offense.

conformity with Part 121,[7] and since the testimony of Burns established that some violations existed throughout the relevant period, it is reasonable to conclude that these violations existed on every flight. Also, the FAA inspection of the plane, which found certain equipment missing or inoperable, creates the presumption, in the case of violations that pertained to rather permanent conditions, that the violation existed for a long period. Even with more transient conditions, such as life vests, a Government finding of the absence of such is sufficient, at least for a reasonable temporal period, to imply their continued absence. It is no great burden on an aircraft operator to establish when equipment was put aboard an aircraft or removed. Moreover, to require a special interrogatory answer on each type of violation for each flight would mean hundreds of questions.

Because of the discrepancies and questions noted above, it would be appropriate to remand to the district court to determine which violations were applicable and the number of days or flights on which they occurred, and, if necessary, to recompute the total fine.[8] I dissent, however, from the opinion of the Court that a retrial is necessary to determine liability, since this will allow some very culpable defendants a second chance to avoid liability for acts of which they were clearly guilty. To the extent that the majority opinion places an unreasonable burden on the Government, it constitutes a regrettable precedent. Consequently, I most vigorously dissent.

---

7. Evidence presented by the FAA showed that the inspection program being utilized by IAL was intended to comply only with Part 91 requirements. Further, it had been tampered with to make it appear as if it had been approved by the FAA.

8. Of course, I agree with the majority's finding that the Government's claims should not have been dismissed on the ground that the FAA

was illegally invading the exclusive regulatory province of the Civil Aeronautics Board. I also agree that there is no unconstitutional ambiguity in the definition of "commercial operator" in 14 C.F.R. § 1.1 and that there is no need to rule on Landy's claim that the Government's seizure of his plane violated due process, since this claim was substantially abandoned in the trial court.