MÉRIDA OCASIO JUARBE, demandante y apelante, *v.* EASTERN AIRLINES, INC., demandada y apelada.

*Número:* CT-89-95 *Resuelto:* 5 de febrero de 1990

412

*Enrique Alcaraz Micheli,* abogado de la apelante; *Francisco Ponsa-Flores,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Mediante el proceso de certificación establecido por la Regla 53.1(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III, y la Regla 27 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. I-A, la Corte Federal de Apelaciones para el Primer Circuito nos pide que le aclaremos si la falta de cuidado en el desalojo de los pasajeros de un avión durante un aterrizaje de emergencia constituye una violación contractual o un acto u omisión negligente compensable mediante acción en daños y perjuicios. En caso de que determináramos que se trata de una violación contractual, tendríamos que decidir qué término prescriptivo es aplicable.

Luego de un cuidadoso examen de la doctrina y la jurisprudencia aplicables, concluimos que los hechos alegados en la demanda podrían originar una causa de acción en daños y perjuicios al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. El término prescriptivo de esta acción es de un (1) año según lo establece el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298.

I

En julio de 1985 la Sra. Mérida Ocasio Juarbe compró un pasaje ida y vuelta para California a Eastern Airlines. El 4 de agosto de 1985, en el vuelo de regreso, ruta Miami–San Juan, Eastern Airlines recibió una llamada telefónica en Puerto Rico advirtiéndoles de la colocación de una bomba en el avión.

Ante la gravedad de la situación, se realizó un aterrizaje de emergencia en la isla de Caicos en las Bahamas. Tan

pronto como el avión aterrizó, se procedió a desalojar rápidamente del mismo a todos los pasajeros. Debido a la prontitud con que había que realizar esta operación, se utilizaron las rampas deslizadoras designadas para salidas de emergencia.

Alega la demandante que los empleados de Eastern Airlines no ejercieron el debido cuidado necesario en el manejo de la situación y, como consecuencia de ello, sufrió daños. Éstos ocurrieron cuando otros pasajeros le cayeron encima a la demandante al llegar al final de la rampa deslizadora.

El 20 de agosto de 1987 la señora Ocasio presentó una demanda contra Eastern Airlines en el Tribunal de Distrito federal. Ya había transcurrido dos (2) años desde que ocurrió el accidente.[1]

La parte demandada solicitó la desestimación del pleito porque había transcurrido el término prescriptivo de un (1) año establecido por nuestro ordenamiento para acciones en daños y perjuicios. Por su parte, la demandante alegó que no se trataba de una acción en daños y perjuicios, sino una violación al contrato existente entre las partes.[2]

El Tribunal de Distrito Federal para el Distrito de Puerto Rico acogió el planteamiento de la parte demandada y desestimó la causa de acción. La demandante apeló al Tribunal Federal de Apelaciones para el Primer Circuito y éste oportunamente certificó las preguntas siguientes.

1. Para los fines de determinar el estatuto de prescripción aplicable, ¿los hechos según alegados en la demanda dan lugar a una acción en daños y perjuicios o a una por incumplimiento de contrato?

2. Si la acción es por incumplimiento de contrato, ¿el término prescriptivo aplicable debe ser el período de quince (15)

---

[1] No se alegó ni surge del expediente que hubiera algún tipo de interrupción extrajudicial del término prescriptivo.

[2] El contrato a que se refiere la demandante es el boleto comprado a la línea aérea.

años establecido por el Artículo 1864 del Código Civil de Puerto Rico, o el término de un año establecido para acciones en daños y perjuicios por ser éste el término más análogo bajo las doctrinas de *Olmo* [*v. Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740 (1981),] y *Lozada Torres* [*v. Collazo*, 111 D.P.R. 702 (1981)]? (Traducción nuestra.) *Certification*, pág. 6.

Acogemos la certificación y procedemos a contestar las preguntas remitidas no sin antes aclarar algunos aspectos sobre el proceso de certificación.

## II

■ Nuevamente nos encontramos ante una controversia de interpretación del Derecho puertorriqueño que puede determinar el resultado del caso ante la Corte Federal de Apelaciones para el Primer Circuito. La certificación constituye un valioso instrumento que tiene disponible el foro federal para obtener una interpretación definitiva del Derecho puertorriqueño en una materia donde no hay precedentes claros y esta cuestión puede determinar el resultado final del asunto. *Medina & Medina v. Country Pride Foods*, 122 D.P.R. 172 (1988); *Pan Ame. Comp. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780 (1982).

■ La certificación es un mecanismo que contribuye a mejorar las relaciones entre los foros federales y estatales. Para lograr este objetivo, las cortes federales deben utilizarlo con prudencia para aclarar cuestiones estatales cuando no existan precedentes claros para resolver una controversia pendiente ante ese foro. Corr y Robbins, *Interjurisdictional Certification and Choice of Law*, 41 (Núm. 3) Vanderbilt L. Rev. 411, 413 (1988).

Consciente de las peculiaridades históricas y jurídicas del Derecho puertorriqueño, la Corte Federal de Apelaciones para el Primer Circuito ha utilizado adecuadamente el proceso de certificación, demostrando así una sensibilidad y

un respeto a nuestro derecho que son aleccionadores. Véase S. Breyer, *The Relationship Between the Federal Courts and the Puerto Rico Legal System*, LIII Rev. Jur. U.P.R. 307 (1984).

El caso ante nuestra consideración cumple con todos los requisitos de la Regla 27 del Reglamento de este Tribunal, *supra*, y nuestra contestación contribuirá a que el foro federal amplíe sus conocimientos sobre las instituciones de nuestro Derecho.

■ En primer lugar, la controversia se circunscribe a la naturaleza de la acción y su término prescriptivo según nuestro ordenamiento. Al establecer el tipo de acción y su término prescriptivo, determinamos el resultado del pleito. No existe en nuestra jurisprudencia precedentes suficientemente claros que dispongan de la controversia. Finalmente, hay una relación de hechos claros e incontrovertibles, y la naturaleza de la cuestión certificada excluye la posibilidad de que nuestra opinión constituya una opinión consultiva o que la controversia sea académica. *Pan Ame. Comp. Corp. v. Data Gen. Corp.*, supra, pág. 788.

### III

Para poder determinar si los hechos acaecidos originan una acción en daños y perjuicios o una acción por incumplimiento de contrato es necesario examinar la naturaleza de las obligaciones incurridas por la línea aérea y sus pasajeros.

■ El pasajero que compra un boleto de avión entra en una relación contractual con la línea aérea. De este contrato de transporte surgen obligaciones para la línea aérea y para el pasajero. La obligación principal de la línea aérea es transportar al pasajero y su equipaje al destino escogido, y la del pasajero es pagar la tarifa estipulada por el servicio. Sin embargo, estas no son las únicas obligaciones que surgen

del contrato. El Art. 1210 del Código Civil dispone que los contratos obligan a las partes "no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la Ley". 31 L.P.R.A. sec. 3375.

En Estados Unidos y en Puerto Rico el servicio ofrecido por las líneas aéreas está reglamentado por el Programa Federal de Aviación, 49 U.S.C. sec. 1301 *et seq.*[3] Las tarifas, las reglas y los reglamentos promulgados al amparo de esta legislación forman parte de los contratos de transportación aérea de pasajeros entre Puerto Rico y Estados Unidos. *Firpi v. Pan American World Airways, Inc.*, 89 D.P.R. 197, 207 (1963). En este sentido, el contrato de transporte aéreo de pasajeros está reglamentado por una ley especial. Véase J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1978, T. II, Vol. 1, pág. 472 (Doctrina General del Contrato).

A las líneas aéreas comerciales se les requiere que presenten un certificado de necesidad y conveniencia donde se especifica las rutas que cubrirán y los servicios que ofrecerán. Si debido a una emergencia la línea aérea tiene que aterrizar en un lugar no especificado en su certificado, esto no constituirá una violación al certificado presentado. 49 U.S.C. sec. 1371(e)(5).

Además de reglamentar las rutas a servir, la agencia reguladora requiere a las líneas aéreas que mantengan adecuadamente el equipo, que tomen las medidas de seguri-

---

[3] En España se ha reconocido la existencia de un contrato de transporte entre el pasajero y la línea aérea. Sin embargo, la responsabilidad por riesgo en la navegación aérea está regulada por leyes especiales y tratados internacionales que limitan la cuantía de daños a ser compensados y el término para ejercitar la acción. Véase J. Santos Briz, *La responsabilidad civil: derecho sustantivo y derecho procesal*, Madrid, Ed. Montecorvo, 1981, págs. 583–589.

dad pertinentes y que sus empleados operen los aviones de forma cuidadosa y correcta —49 U.S.C. secs. 1421–1426; 14 C.F.R. secs. 21–137; *Nader v. Federal Aviation Administration*, 440 F.2d 292 (Cir. D.C. 1971); *Landy v. Federal Aviation Administration*, 635 F.2d 143 (2do Cir. 1980); *Gibbs v. United States*, 251 F. Supp. 391 (D.C. Tenn. 1965)— de manera que la obligación que tiene una línea aérea de operar en forma cuidadosa y segura surge de la propia reglamentación federal y no de una obligación contractual. Este deber de cuidado por la seguridad exigible a la línea aérea y a sus empleados lo pueden invocar tanto los pasajeros que compraron su boleto, y quienes por lo tanto contrataron con la línea aérea, como aquellos que volaban gratuitamente.

 Las acciones en daños y perjuicios proceden cuando ha habido una violación de un derecho que se concede o la omisión de un deber impuesto por ley. El Art. 1802 del Código Civil, *supra*, le impone la obligación a quien causa un daño, mediando culpa o negligencia, de repararlo. Este deber general de corrección en relación con los demás ciudadanos es requisito indispensable para la convivencia social ordenada. *Ramos v. Carlo*, 85 D.P.R. 353, 359 (1962). El estándar de conducta para determinar si un acto es o no negligente es la diligencia exigible a la figura mítica del hombre prudente y razonable. *Hernández v. La Capital*, 81 D.P.R. 1031, 1038 (1960). Según esta norma, "[l]a culpa o negligencia es la falta del debido cuidado, que a la vez consiste esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *Ramos v. Carlo*, supra, pág. 358.

 La conducta de Eastern Airlines tiene que evaluarse según este estándar de conducta. Aun en una situación de emergencia como la de este caso, la conducta debe

ser razonable dentro de las circunstancias de emergencia. *Banchs v. Colón*, 89 D.P.R. 481, 487 (1963).

■ Por otro lado, "las acciones derivadas de contratos tienen por objeto que se cumplan las promesas contractuales sobre las que las partes de un contrato otorgaron su consentimiento. Surgen éstos de las obligaciones que libremente han convenido los contratantes y nacen de una acción u omisión voluntaria, por lo que resulta incumplida una obligación anteriormente constituida". *Santiago Nieves v. A.C.A.A.*, 119 D.P.R. 711 (1987).

## IV

■ En el caso que nos ocupa había un deber impuesto por ley para ejercer un debido cuidado en el manejo de la situación de emergencia. No hubo ninguna violación al contrato entre las partes, pues la señora Ocasio llegó a su destino según lo estipulado. Una parada de emergencia, para cumplir con el deber de seguridad que le debe la línea aérea a todos sus pasajeros, no es el incumplimiento de una obligación contractual. Sin embargo, el modo en que la línea aérea procedió a desalojar a los pasajeros durante la emergencia podría dar lugar a una acción en daños y perjuicios si no se cumplió con el deber general de cuidado impuesto por el Art. 1802 del Código Civil, *supra*. Es por lo antes expuesto que la causa de acción que procedía en el caso de autos era por daños y perjuicios, causa cuyo término de prescripción es de un (1) año.[4]

En apoyo del argumento contrario que sostiene una violación contractual, la demandante cita a *Arroyo v. Caldas*, 68

---

[4] Véanse, además, los casos siguientes: *Fraticelli v. St. Paul Fire and Marine Insurance Co.*, 375 F.2d 186 (1er Cir. 1967); *Nuñez v. Horn*, 336 F. Supp. 447 (P.R. 1970); *Lexington Insurance Co. v. Abarca Warehouses Corp.*, 476 F.2d 44 (1er Cir. 1973).

D.P.R. 689 (1948). No obstante, este caso es claramente distinguible del caso de autos. Allí se trataba de una violación contractual porque el objeto del contrato de arrendamiento no estaba en buenas condiciones para su uso y parte de su *obligación principal* como arrendador era "hacer en ella . . . todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada". Art. 1444 del Código Civil, 31 L.P.R.A. sec. 4051. Al no estar el objeto del contrato en condiciones óptimas para lo que se había arrendado, se incumplió la obligación contractual principal, esencia misma del contrato.

Los demás precedentes citados por la parte demandante, *Rosario Quiñones v. Municipio de Ponce*, 92 D.P.R. 586 (1965); *Camacho v. Iglesia Católica*, 72 D.P.R. 353 (1951); *Maldonado v. Municipio de Ponce*, 39 D.P.R. 247 (1929), son inaplicables a la situación ante nos. Estos tratan sobre ventas de tumbas que ya habían sido previamente vendidas y comprenden violaciones claras y directas al contrato de compraventa o arrendamiento que allí se alude. Al expresarnos sobre la situación ilustrada en *Maldonado v. Municipio de Ponce*, supra, pág. 250, donde para realizar la segunda venta se profanó la tumba ya vendida, dijimos: "El fundamento de la acción fu[e] la profanación por parte del demandado de la tumba previamente vendida y entregada a los demandantes. Cuando el municipio abrió el nicho y trasladó los restos de allí, *no solamente cometía un acto dañoso (tort)*, sino que también quebrantaba el contrato de compraventa." (Énfasis nuestro.)

En vista de que la acción del presente caso es en daños y perjuicios con un término prescriptivo de un (1) año, es innecesario que contestemos la segunda pregunta certificada.

*Se dictará la sentencia en conformidad con lo expuesto anteriormente.*

El Juez Presidente Señor Pons Núñez y el Juez Asociado Señor Negrón García concurren con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López disiente por cuanto entiende que la falta de cuidado que observe una línea aérea en relación con sus pasajeros durante la travesía acordada en el contrato de transporte celebrado, la cual conducta sea la causa directa de daños sufridos por estos últimos, constituye una violación al referido contrato de transporte; ello por razón de que el mismo necesariamente conlleva una obligación general de seguridad. En consecuencia, a la acción radicada en el presente caso por la parte demandante *no* le es de aplicación el término prescriptivo de un (1) año establecido por nuestro ordenamiento en relación con el ejercicio de las acciones de daños y perjuicios.