DANIEL ALONSO HERNÁNDEZ ET AL., demandantes, *v.* CITIBANK, N.A., demandado.

*Número:* CT-93-347      *Resuelto:* 30 de junio de 1994

*Arnaldo E. Granados*, de *Ortiz Toro & Ortiz Brunet*, abogado de los demandantes; *José Enrique Otero*, del *Bufete Irizarry, Otero & López*, abogado del demandado.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Por tratarse de un asunto novel en el derecho puertorriqueño, el Tribunal de Distrito Federal para el Distrito de Puerto Rico, conforme a la Regla 27 de nuestro Reglamento, 4 L.P.R.A. Ap. I-A, nos certificó la siguiente cuestión para nuestra consideración:

> ¿Aplica la sección 13–101 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. 1751, a la persona a cuyo nombre aparece registrado un vehículo de motor, cuando dicha persona es el "arrendador financiero" (*financial lessor*) del vehículo y tiene título de dueño sobre el mismo conforme a los términos de un contrato de arrendamiento a largo plazo, y cuando el accidente en cuestión fue causado por la negligencia exclusiva del conductor del vehículo, que lo manejaba con el consentimiento del arrendatario (*lessee*)?

I

El 19 de octubre de 1991 Manuel Sánchez Reyes perdió el control del automóvil marca Toyota que conducía e impactó por detrás a un camión que transitaba por la misma carretera y en la misma dirección. Sánchez Reyes pereció en el accidente al igual que Daniel Alonso Labatut, uno de los pasajeros que viajaba en el automóvil. Su hermana, Milagros Alonso Labatut, quien también iba en el automóvil, sufrió lesiones en el cuello y en la espalda.

El vehículo en cuestión estaba registrado en el Departamento de Transportación y Obras Públicas (D.T.O.P.), al momento del accidente, a nombre de Citibank, N.A. (en adelante Citibank) en concepto de dueño. La madre del conductor, Mercedes Reyes, aparecía como arrendataria (*lessee*) en el contrato de arrendamiento que ésta había acordado con Citibank.

Los padres y otros familiares de Daniel Alonso Labatut se unieron a Milagros Alonso Labatut como demandantes en una acción de daños y perjuicios contra Citibank, presentada en el Tribunal de Distrito Federal para el Distrito de Puerto Rico por razón de diversidad de ciudadanía. Se alegó en dicha acción que Citibank, como dueño del vehículo conducido negligentemente por Sánchez Reyes, respondía solidariamente por los daños causados por éste, conforme a lo dispuesto en la Sec. 13–101 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1751.

Durante los procedimientos, la parte demandada planteó como defensa que el referido artículo de la Ley de Vehículos y Tránsito de Puerto Rico no le aplicaba a arrendadores financieros (*financial lessors*) como Citibank. Alegó que los contratos de arrendamiento, como el que está ante nos ahora, son sólo un medio de financiar la compra de vehículos de motor y que el título de dueño que ostenta Citibank es sólo una formalidad dirigida a garantizar que el arrendatario cumpla con sus obligaciones contractuales. Alegó, además, que el automóvil estuvo siempre bajo el control y posesión exclusiva de la arrendataria Mercedes Reyes desde que se formalizó el contrato entre ellos.

El demandado Citibank solicitó la desestimación de la demanda por la alegación referida de que no respondía civilmente bajo la Sec. 13–101 de la Ley de Vehículos de Puerto Rico, *supra*. El Tribunal de Distrito Federal para el Distrito de Puerto Rico denegó la desestimación y siguió adelante con los procedimientos. Durante el juicio, Citibank solicitó, en dos ocasiones, la desestimación de la demanda por el mismo fundamento que antes y el tribunal también las denegó. Eventualmente, el Jurado en el juicio de instancia, que había sido instruido sobre el planteamiento de Citibank, rindió un veredicto contra éste y encontró al banco responsable por los daños causados por la negligencia del conductor del vehículo. Luego el tribunal procedió a dictar sentencia, condenando a Citibank a pa-

garle a los demandantes la suma de $70,000. Citibank solicitó entonces que se dejara sin efecto el veredicto y la sentencia, insistiendo de nuevo en que no le aplicaba la aludida Sec. 13–101.

Es en este contexto que el Tribunal de Distrito Federal para el Distrito de Puerto Rico nos certificó la cuestión jurídica aludida. Para completar la descripción de los hechos pertinentes es menester aludir a los términos esenciales del contrato en cuestión.

Conforme al contrato de arrendamiento, Mercedes Reyes se obligó a pagar a Citibank la cantidad de $384 mensuales por la posesión, uso y disfrute del automóvil (*possession and quiet enjoyment of the unit*) durante un período mínimo de 60 meses. El uso del vehículo por el arrendatario estaba limitado por varias condiciones restrictivas fijadas contractualmente por el arrendador, tales como que: (1) el automóvil sólo se usaría dentro de los confines territoriales de Puerto Rico; (2) que sólo lo conducirían personas mayores de 21 años de edad, y (3) que no podía utilizarse para transportar personas o carga comercialmente. Al cabo del término del alquiler, el arrendatario tendría derecho a adquirir el vehículo pagándole al arrendador el valor residual acordado en el contrato ($3,000). En ese momento, el arrendatario también tendría la opción de entregar el vehículo a Citibank o renegociar un nuevo contrato de arrendamiento. Parte del canon mensual de arrendamiento ($102) estaba destinado por acuerdo de las partes a pagar el costo de una póliza de seguro (*business auto policy*) a favor de Citibank como coasegurado con una cubierta de $1,000,000. Finalmente, en el contrato se estipulaba —en términos claros y sobresalientes— que este contrato era un acuerdo de alquiler entre las partes, que no transfería de modo alguno el título de propiedad al arrendatario. Decía expresamente la cláusula catorce del contrato lo siguiente:

THIS INSTRUMENT IS A LEASE AND NOT A CONTRACT

OF SALE. The unit is the sole property of lessor and lessee shall have no right, title or interest therein as to ownership thereof ....

## II

La certificación que nos sometió el Tribunal de Distrito Federal para el Distrito de Puerto Rico en este caso ha seguido un curso inusitado que no habíamos encarado en su totalidad antes. Las circunstancias especiales de esta solicitud de certificación presentan, pues, una situación novedosa que requiere que hagamos unos breves pronunciamientos sobre el particular.

La sentencia del Tribunal de Distrito Federal para el Distrito de Puerto Rico condenando a Citibank a pagarle $70,000 a los demandantes fue emitida en febrero de 1993. Luego de considerar sendas mociones y memorando de derecho de las partes, dicho tribunal nos certificó la cuestión novel aludida el 16 de julio de 1993.

Así las cosas, la parte demandante presentó su alegato ante nos sobre el recurso de certificación el 13 de septiembre de 1993. El demandado Citibank presentó el suyo el 17 de septiembre de 1993 y los demandantes replicaron el 28 de octubre de ese año. El 3 de noviembre de 1993 notificamos la denegatoria de una moción del demandante solicitando vista oral, y el caso quedó sometido.

El 1ro de junio de 1994, cuando ya habíamos formulado una opinión mayoritaria para resolver el asunto ante nos —que iba a ser emitida durante los próximos días— el demandado Citibank compareció ante este Tribunal mediante moción informativa para indicarnos que las partes habían llegado a un acuerdo transaccional que habría de disponer definitivamente del caso pendiente ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico, que había dado lugar a la certificación ante nos.

En su moción informativa el demandado Citibank no nos informó sobre las acciones tomadas por el Tribunal de

Distrito Federal para el Distrito de Puerto Rico respecto a la transacción aludida. Sólo nos pidió que tomáramos conocimiento del acuerdo transaccional "a todos los fines legales pertinentes", indicándonos que entendían "que ninguna de las partes puede solicitar desistimiento del recurso de Certificación que actualmente se encuentra pendiente ante este Honorable Tribunal Supremo toda vez que, como es conocido, ese recurso se inició mediante solicitud emitida por ... el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico".

Los demandantes, por su parte, no comparecieron, como debieron hacerlo,[1] para informarnos de la referida transacción ni para hacer el planteamiento correspondiente sobre el desistimiento del recurso ante nos. Tampoco habíamos recibido comunicación alguna del Tribunal de Distrito Federal para el Distrito de Puerto Rico relativa a la transacción aludida. Dicho foro no había retirado la certificación ante nos ni nos había sometido ninguna determinación suya que ordenara el archivo del caso por desistimiento.

En vista de lo anterior, no estábamos procesalmente en condiciones para resolver respecto a la aludida moción informativa del demandado. Por ello, solicitamos de la Secretaría del Tribunal federal información sobre el *status* del caso en ese foro, y el 17 de junio de 1994 dicha secretaría nos informó que, en efecto, el Tribunal federal había aceptado la estipulación de las partes transigiendo el pleito. Nos enteramos así que el 2 de junio de 1994 dicho tribunal federal desestimó formalmente la acción pendiente allí.

Por lo antes relatado, aun en esta avanzada etapa de los procedimientos ante nos, debemos abstenernos de resolver la importante y novel cuestión que nos fue certificada por el foro federal. Reiteradamente hemos resuelto que la certificación no puede eludir el principio fun-

---

[1] Véase *In re Vélez Báez*, 128 D.P.R. 509 (1991).

damental relativo a que la función judicial sólo puede ejercerse para resolver controversias concretas, reales y efectivas entre las partes litigantes. Véanse: *Ocasio Juarbe v. Eastern AirLines, Inc.*, 125 D.P.R. 410 (1990); *Pan Ame. Comp. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780 (1982); *Zurkowsky v. Honeywell, Inc.*, 112 D.P.R. 271 (1982). En este caso, aunque llegamos a formular una posición mayoritaria sobre el asunto, la súbita transacción del pleito y su desestimación final, por el Tribunal de Distrito Federal para el Distrito de Puerto Rico, han convertido en académica la controversia concreta del pleito de marras. Ninguna de las contestaciones que podíamos dar a la pregunta certificada habrá de determinar el resultado del caso. Cualquier pronunciamiento nuestro en estas circunstancias, pues, constituiría una opinión consultiva contraria a la política de autolimitación que hemos establecido sobre el particular. *Asoc. de Periodistas v. González*, 127 D.P.R. 704 (1991).

■ Nuestra decisión se apoya decisivamente, además, en el hecho de que la importante y novel cuestión que nos fue certificada por el foro federal, aunque de naturaleza recurrente, está planteada también en otro caso que está pendiente ante nos y que habremos de resolver oportunamente. No tenemos ante nos, pues, una instancia de la *excepción* a la doctrina de cuestión académica que se configura cuando la controversia es recurrente. Aquí, aunque el caso de marras trata sobre una controversia que es susceptible de volver a ocurrir, ésta *no habrá de quedar sin dilucidarse prontamente.*

Por las razones expuestas, *declinamos resolver en este caso la cuestión que nos fue certificada por el Tribunal de Distrito Federal para el Distrito de Puerto Rico.*

El Juez Asociado Señor Hernández Denton concurrió con una opinión escrita. El Juez Asociado Señor Rebollo López emitió un voto concurrente particular.

## — O —

Opinión concurrente del Juez Asociado Señor Hernández Denton.

Coincidimos con el resultado expresado en la opinión mayoritaria en cuanto a que este caso se convirtió en académico y que, por ende, no procedía acceder a la solicitud de certificación presentada por el Tribunal de Distrito federal. No obstante, concurrimos por entender que el asunto ante nuestra consideración no amerita que emitamos una opinión del Tribunal y para expresar nuestro desacuerdo con la idea presentada por la opinión mayoritaria, sobre que nuestra negativa a contestar la pregunta certificada "se apoya decisivamente ... en el hecho de que la ... cuestión que nos fue certificada por el foro federal, aunque de naturaleza recurrente, está planteada también en otro caso que está pendiente ante nos ...". Opinión mayoritaria, pág. 576.

Ciertamente, es correcto el resultado al cual llega la opinión mayoritaria de que la controversia que origina la certificación de autos es académica. La Regla 27 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. I-A, dispone, en lo pertinente:

> (a) Este Tribunal podrá conocer de cualquier asunto que le fuere certificado por ... [un tribunal de distrito federal] cuando así lo solicite [dicho tribunal], de existir ante el tribunal solicitante cualquier asunto judicial en el que están envueltas cuestiones de derecho puertorriqueño que puedan determinar el resultado del mismo ....
>
> (b) Dicha certificación se formalizará al radicarse la solicitud, la cual consistirá de una resolución a tales efectos emitida por el tribunal solicitante, *sua sponte* o a moción de cualquiera de las partes ....

Claramente, al amparo de la Regla 27(a) del Reglamento del Tribunal Supremo, *supra,* cuando el pleito se transige ya no existirá ante el foro federal un "asunto ju-

dicial en el que están envueltas cuestiones de derecho puertorriqueño que puedan determinar el resultado del mismo". La transacción del pleito, por su propia naturaleza, concluyó el caso y determinó su resultado.

La Regla 53.1(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III, también apoya nuestra conclusión al disponer que el recurso de certificación se formaliza cuando el tribunal solicitante "tenga ante su consideración un caso en el cual surjan cuestiones de derecho local que sean determinantes en la causa de acción". Es obvio que, dada la transacción del litigio ante el foro federal, dicho tribunal ya no tendrá ante su consideración "un caso" o controversia concreta, mucho menos uno "en el cual surjan cuestiones de derecho local que sean determinantes". Íd. A esos mismos efectos, expresamos en *Pan Ame. Comp. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780, 785–786 (1982), que:

> ... la certificación no puede eludir el principio fundamental que fija el sentido y propósito de la función judicial, el de que ésta solo puede ejercerse para resolver controversias concretas, reales y efectivas entre litigantes que reclaman derechos opuestos ante el tribunal. Es necesario, por lo tanto, que la certificación satisfaga cabalmente este principio elemental de justiciabilidad no solo en nuestro foro, sino, además, en el foro federal.
>
> Las preguntas certificadas deben, pues, ser enmarcadas en un contexto de hechos detallados y específicos y la contestación del tribunal debe ser obligatoria para las partes. (Citas omitidas.) A estos efectos, véase también *H.E. Vicente Cuesnongle, O.P. v. D.A.C.O.*, 119 D.P.R. 457, 462–464 (1987), opinión concurrente.

Por otro lado, al declinar la solicitud de certificación no consideramos pertinente que la cuestión certificada por el foro federal esté planteada también en otro caso pendiente ante nos. Independientemente de si el asunto esté o no pendiente, lo cierto es que una contestación a la pregunta, bajo estas circunstancias, constituiría un ejemplo clásico de una opinión consultiva. Si bien es cierto que un caso no

es académico cuando la controversia que presenta es capaz de repetirse, pero, por su naturaleza, probablemente eludirá la revisión judicial, también es cierto que esta controversia no es del tipo que elude la revisión judicial.

Finalmente, coincidimos con el Juez Asociado Señor Rebollo López cuando éste expresa en su voto particular que la opinión mayoritaria "no resuelve una controversia ni añade nada nuevo o significativo a nuestro acervo jurisprudencial". (Énfasis suprimido.) Voto concurrente particular, pág. 579. En vista de la transacción entre las partes, la controversia de autos debió resolverse mediante la certificación de una sentencia o una resolución explicada.

—o—

Voto concurrente particular emitido por el Juez Asociado Señor Rebollo López.

Recientemente —el pasado 10 de junio de 1994— expresamos que la "situación en éste, el más alto Foro judicial del País, es ciertamente cada día más alarmante". Dichas expresiones fueron hechas en relación a unas situaciones en que entendíamos que el Tribunal estaba actuando en violación de unas normas o parámetros que limitan su autoridad y facultad para expresarse respecto a un asunto en particular.

*Nuestra preocupación al respecto va en aumento.* Hoy el Tribunal emite una "Opinión" en un caso que, *admitidamente,* se ha convertido en académico. Ello, sin embargo, *no* es todo. La mal llamada "Opinión del Tribunal", aparte de intentar "amonestar" al foro federal y de anunciar que próximamente resolverá la "importante y novel cuestión" que planteaba el recurso, *no resuelve una controversia ni añade nada nuevo o significativo a nuestro acervo jurisprudencial.*

Esto es, la Mayoría hace caso omiso y/o se olvida del

hecho de que las "Opiniones" que emite este Tribunal se supone que tengan el propósito, entre otros, de establecer nuevas normas de derecho, aclarar y despejar situaciones jurídicas complejas y confusas, y suplir "lagunas" en nuestro ordenamiento. Ahora bien, no hay duda que la "Opinión" emitida convenientemente constituye una estadística más en la columna correspondiente a "casos resueltos" por el Tribunal.

Ante los últimos acontecimientos, *cabe preguntarse qué nos deparará el futuro.*